Marshall, C. J.
 

 This proceeding presents the single question whether a confidential communication made by a party to his attorney loses its privilege if such party becomes a voluntary witness at the trial and testifies generally to matters necessary to establish his cause of action, without re^
 
 *300
 
 ferring in any way to the communications between him and his attorney. It is assumed that the general testimony of the party would establish the liability of the opposing party, and that the testimony of the attorney if he were permitted and required to divulge the communications, would tend to contradict the testimony of the party already offered, and therefore tend to disprove his cause of action. The question involves the interpretation and application of Section 11494, General ■Code, which reads in part as follows:
 

 “The following persons shall not testify in certain respects: * * * An attorney, concerning a communication made to him by his client in that relation, or his advice to his client; or a physician, concerning a communication made to him by his patient in that relation, or his advice to his patient. But the attorney or physician may testify by express consent of the client or patient; and if the client or patient voluntarily testifies, the attorney or physician may be compelled to testify on the same subject.”
 

 If the testimony of the attorney is “on the same subject” as the testimony of the party, then the testimony must be received. It is insisted, however, that the phrase “on the same subject” refers only to the communications as such, and that the attorney may not be compelled to testify if the general testimony offered by the party does not refer in any way to the attorney or to the communications which passed between them; that, even though the testimony of the party is in certain respects directly contradicted by the testimony of the attorney, it cannot be held to be on the same
 
 *301
 
 subject unless the party has voluntarily testified definitely and particularly to the fact of communications having passed.
 
 'á
 

 It is apparent that the testimony of the attorney, as well as the testimony of the party, could have no value to the defendant unless there was a contradiction, and it seems equally apparent that there could be no contradiction unless the testimony of both pertained to the same subject-matter. It is contended, however, by counsel for Spitzer & Coats, that the statute refers to the subject of the communications between client and attorney, and not to the subject of the controversy. The answer to this proposition is that, if it is sought to limit the scope and application of the word “subject,” such limitation should have been defined by the Legislature itself, and that, in the absence of any limitation, it should be taken in an unlimited and unrestricted sense. If the Legislature meant the word “subject” to be confined to the subject of the communications between the client and attorney, it could easily have so stated, and, in the absence of that limitation, it is more probable that it was intended to include the subject-matter of his testimony generally. Counsel for Spitzer
 
 &
 
 Coats insist that the statute should be construed as if it read thus:
 

 “If the client voluntarily testifies to such communication or advice, the attorney may be compelled to testify on the same subject.”
 

 Such a construction would be nothing short of judicial legislation, and would be putting into the language of the statute something which the Legislature omitted. The subject upon which Spitzer
 
 *302
 
 & Coats testified was in part the relation of Moninger to the firm, and the subject of the testimony sought to be developed by the communications between attorney and clients would tend to disprove that relation.
 

 If this case were to be decided according to the principles of the common law, a very different situation would be presented. For approximately 350 years the rule of exclusion of communications between attorney and client had been in force in the English and American courts, with varying degrees of strictness, and based upon theories which have been changed from time to time. It was first established out of consideration for the oath and honor of the attorney, without regard to the rights and privileges of the client. That theory was entirely repudiated more than 200 years ago, and, while the obligation of the attorney not to violate the secrets of his clients is as binding today as it ever was, and while attorneys are neither privileged nor permitted to testify concerning matters which came to their knowledge from a client in that relation, the policy of the privilege became grounded on subjective considerations, and .was designed to promote greater freedom of consultation between clients and their legal advisers. This theory has become firmly established and is still maintained as a common-law rule of evidence. A rule of evidence seldom ripens into a right of property, and this is necessarily true of the so-called privileged communication between attorney and client. It is in any event clearly a matter of policy, and within the power of legislators to change, or even abrogate entirely. This controversy in
 
 *303
 
 volves the interpretation of a legislative act. No one questions the power of the Legislature, and we are only concerned with determining the legislative intent. It would perhaps be more accurate to say that it is rather a question of the application of language entirely free from ambiguity to a given state of facts. ^
 

 A large number of cases have been cited by industrious counsel, all of which have been carefully examined, but the difficulty with the authorities cited is that they have been decided by courts of other states, whose statutes are entirely dissimilar to the Ohio statute, and require either the consent of the party that the attorney may testify, or that the waiver relate only to the subject of the communications, and not to the subject of the client’s testimony. Only two other states in the Union, Wyoming and Oregon, have statutes similar to ours. We find no decision by the Wyoming courts, and only one decision by the Supreme Court of Oregon, to-wit,
 
 Bryant
 
 v.
 
 Dukehart,
 
 106 Or., 359, 210 Pac., 454. In that case the communication was held to be privileged, but in the opinion the court stated that the letter written by the client to the attorney was privileged in that case because the voluntary testimony of the witness in his own behalf did not have any bearing upon the subject-matter of the letter.- It would therefore clearly not be an authority in favor of the contention of plaintiff in error.
 

 This court has declared upon this proposition in no uncertain terms in the case of
 
 King
 
 v.
 
 Barrett,
 
 11 Ohio St., 261. The facts of that case are almost exactly parallel to the facts in the instant
 
 *304
 
 case, and the court in that case declared the following syllabus:
 

 “Communications made by a client to his attorney, with a view to professional advice or assistance, are privileged; and courts will not require nor permit them to be divulged by the attorney, without the consent of his client, whose privilege it is.
 

 “But if a party to a suit offers himself as a witness, and gives evidence, generally, in the case, he thereby loses this privilege, and, under the Code of Civil Procedure (Section 315), consents to the examination of his attorney touching such admissions as are pertinent to the issue.
 

 “At whatever stage of the trial a party thus offers himself as a witness, he may, on cross-examination, be interrogated as to such admissions or communications made to his counsel, and they may be proved by the attorney, either as evidence in chief, or for the purpose of impeachment.”
 

 That decision was based upon Section 315 of the Code of Procedure adopted March 14, 1853 (51 O. L., 109), which at the time of that decision read as follows:
 

 “If a person offer himself as a witness, that is to be deemed a consent to the examination also of an attorney, clergyman or priest, on the same subject, within the meaning of the last two subdivisions of the preceding section.”
 

 A comparison of Section 315 of the original Code with Section 11494, General Code, shows that there has been no change of language which would make the above-quoted syllabus inapplicable
 

 
 *305
 
 to the statute as it now exists. That decision having been rendered in 1860, oxdy seven years after the adoption of the Code of Civil Procedure, and the law having existed since that date without amendment of that particular feature, it will be presumed that the Legislature has been satisfied with the interpretation given in
 
 King
 
 v.
 
 Barrett, supra,
 
 and it being entirely a question of policy, it would amount to judicial legislation upon the part of this court to make a change of interpretation or application at this late date.
 

 The situation is even much stronger than this. On May 14, 1878, 18 years after the decision of
 
 King
 
 v.
 
 Barrett,
 
 the Ohio Legislature made many sweeping amendments to the Code of Civil Procedure, and in the course of the amendments of that date did not overlook Section 315, but amended it by excepting from its operation clergymen and priests, and by including physicians within its provisions, but in no wise modifying or limiting its provisions so far as they relate to attorneys. By the rules of construction of statutes, if a statute is amended in certain particulars, after the same has been interpreted and defined by the courts, without change in other respects, it will be presumed that the Legislature was satisfied with the court’s interpretation upon these features which were unchanged, but that the amended portions were intended to be excepted from the operation of the court’s decision. This rule of construction is thus stated in 36 Cyc., 1153:
 

 “Where a statute that has been construed by the courts has been re-enacted in the same, or substantially the same, terms, the Legislature is pre
 
 *306
 
 sumed to have been familiar with its construction, and to have adopted it as a part of the law, unless it expressly provides for a different construction. ’ ’
 

 In support of that text a very large number of cases are cited as authority from courts of last resort of 23 states, from the United States Supreme Court, and from the English courts. Applying this rule to the instant case, by virtue of the amendment of 1878, communications to clergymen and priests again became privileged, according to the rules of the common law, and communications to attorneys remained subject to the provisions of the statute, as defined and interpreted by the decision of.
 
 King
 
 v.
 
 Barrett.
 

 The judgment of the Court of Appeals in the instant case could not be reversed without at the same time reversing the principles declared in
 
 King
 
 v.
 
 Barrett
 
 and repealing Section 11494, General Code.
 

 It is claimed by counsel that the case of
 
 Duttenhofer
 
 v.
 
 State,
 
 34 Ohio St., 91, 32 Am. Rep., 362, decided in 1877, overruled the case of
 
 King
 
 v.
 
 Barrett.
 
 This claim is untenable, because Section 315, then in force, is a part of the Civil Code and has no relation whatsoever to criminal procedure. This distinction was clearly drawn in the opinion in that case. We agree with the opinion of the court in
 
 King
 
 v.
 
 Barrett
 
 that a party should not only tell the truth, but the whole truth.
 

 It is said that, if the rule of exclusion is not applied, parties many times would not dare to testify at all. This can only be so upon the theory that the client has not told his attorney the truth.
 
 *307
 
 A party has no right to call a witness to establish as facts matters which he himself knows to be untrue,- and a party who knowingly calls a witness to the stand to testify falsely is guilty of subornation of perjury. If the waiver of the privilege as declared by the statute results in preventing a party from testifying falsely, after having made a truthful disclosure to his counsel, upon what principle can it be said that the policy of the statute is not sound?
 

 It must be kept in mind that this statute does not permit the attorney to volunteer his testimony, or even permit him to testify, until after the client has voluntarily offered himself as a witness. The statute can serve no purpose except to expose perjury. If the client’s testimony harmonizes with the communication to the attorney, it is-to his advantage to have the attorney testify, and his cause is thereby advanced. If there is flat contradiction his cause is lost, but the cause of abstract justice is greatly enhanced. The just loss to one individual becomes the just gain to his adversary and to the community.
 

 In this case we are only discussing the rule in its application to civil cases, and we are of the opinion that clients should make full disclosure to attorneys, and, if the facts thus disclosed do not justify litigation, they should not be encouraged to plead a different state of facts in order to establish a cause or defense, and, if they persist in doing so, and in further pursuance of that design voluntarily testify concerning the modified facts and circumstances, they should be made to suffer the consequences. A client has nothing to fear
 
 *308
 
 who makes a truthful disclosure to counsel, and who also offers truthful testimony on the witness stand. The rule of exclusion places a premium on perjury.
 

 In affirming the Court of Appeals and remanding the cause to the trial court for further proceedings these matters will again come up for determination and full inquiry into the communications between attorney and client. "We are not assuming that either the parties or the attorney will testify as counsel for the defendant in error have claimed: neither are we assuming that the plaintiffs below offered other than truthful testimony. These matters must be developed by the new trial uninfluenced by any expressions in this opinion.
 

 The judgment of the Court of Appeals will be affirmed.
 

 Judgment affirmed.
 

 Robinson, Jones, Matthias, Day and Allen, JJ., concur.