INZANO, APPELLANT, *v.* JOHNSTON, APPELLEE, ET AL.

---

(No. 11-134 — Decided
September 8, 1986.)

*Corso, Corso & Hausler* and *G. Alan Corso,* for appellant ·Sylvia Inzano.

*Douglas A. King* and *John S. Polito,* for appellee Neil V. Johnston, M.D.

LYNCH, J. Plaintiff is appealing the judgment of the Court of Common Pleas of Lake County in which the trial court overrruled plaintiff's motion for judgment notwithstanding the verdict which was in favor of defendant.

On December 10, 1982, plaintiff, age sixty-one, went to the office of defendant, an opthalmologist, in Mentor, Ohio, to have her eyes examined because she had blurred vision and severe headaches. During the course of such examination, eye drops were placed in plaintiff's eyes to dilate the pupils.

Upon examination, defendant informed plaintiff that she had two cataracts on her left eye which caused her vision to be 20/200 in such eye; that her right eye's vision was 20/40 with her present glasses which could be corrected to 20/25; and that there was no immediate need for surgery of the cataracts on her left eye because of good vision in her right eye. Plaintiff's vision in her right eye was good enough to permit her to drive an automobile in the state of Ohio prior to her appointment with defendant.

Upon the completion of her eye examination, plaintiff went back to defendant's reception area to await her daughter who had driven her to defendant's officè. Plaintiff told the receptionist that she wanted to use the ladies' restroom. Plaintiff's testimony was that she was told that the restroom was down the hallway while defendant's receptionist testified that she told plaintiff that the restroom was the third door down the hall on the right.

Instead of going to the third door on the right, plaintiff went to the second door on the right which was to the steps to the basement. When she opened the door to the basement, it was dark. She took a short step inside and began to feel the wall with her hand for a light switch. Plaintiff lost her balance and fell backwards down five concrete stairs to a concrete landing as a result of which she suffered a compression fracture of her spine and other injuries.

Plaintiff's testimony was that when she got to the subject door, she saw a sign on top of the door that was a white blur to her and she assumed that it was the restroom. Defendant's testimony, which is supported by defendant's Exhibits C through G, was that the door to the basement was

unlocked by order of the Mentor Fire Marshall as an exit in case of fire; that such door had a sign on it with the word "Private" in white letters that are one and one-half inches high on a brown background together with an international hand signal denoting "halt"; and that the restroom had a sign with the word "Rest Room" in the same color and size and on the same background as the "Private" sign. The "Rest Room" sign also had on it the international sign of a man and woman, denoting a restroom for use of both sexes. Defendant also testified that the restroom door was always kept open and that the light in the restroom was kept on during office hours.

On November 18, 1983, plaintiff filed her complaint against defendant on two legal grounds, namely, premises liability and medical malpractice. Upon the close of plaintiff's evidence, the trial court sustained defendant's motion for a directed verdict on the medical malpractice ground.

The verdict of the jury was unanimously for defendant.

Plaintiff's first assignment of error is that the trial court erred to the prejudice of plaintiff in granting defendant's motion for directed verdict made at the close of plaintiff's case.

This assignment of error is directed to the trial court's decision which sustained defendant's motion for a directed verdict as to the medical malpractice ground of plaintiff's complaint.

Under Ohio law, the plaintiff in a medical malpractice case must establish, by expert testimony, the requisite standard of skill and care of physicians in the medical community, the negligent failure of the defendant to render treatment in conformity with the standard and the proximate causation of the plaintiff's damages by the defendant. *Steinmetz* v. *Francis J. Lowry, D.D.S. & Assoc., Inc.* (1984), 17 Ohio App. 3d 116, 118-119, 17 OBR 179, 181, 477 N.E. 2d 671, 674; *Bruni* v. *Tatsumi* (1976), 46 Ohio St. 2d 127, 75 O.O. 2d 184, 346 N.E. 2d 673.

In the instant case, the decisive issue was the effect on the vision of plaintiff of the drops placed in her eyes by defendant. Plaintiff did not produce any expert testimony but defendant produced two medical experts who testified that such drops did not affect the vision of plaintiff.

Under the facts of this case, we agree with the decision of the trial court that plaintiff was required under Ohio law to have expert testimony to establish medical malpractice by defendant. Therefore, we overrule the plaintiff's first assignment of error.

Plaintiff's third assignment of error is that the decision of the Court of Common Pleas of Lake County is against the manifest weight of the evidence and is contrary to law.

This assignment of error is directed to the trial court's decision which denied plaintiff's motion for judgment notwithstanding the verdict.

Upon a review of the entire record of this case, we hold that there was sufficient evidence in the record to support the verdict of the jury and the decision of the trial court to deny plaintiff's motion for judgment notwithstanding the verdict. Therefore, we overrule plaintiff's third assignment of error.

Plaintiff's second assignment of error is that the trial court erred to the prejudice of plaintiff in not permitting plaintiff to call defendant's counsel to the witness stand to inquire into certain answers to interrogatories verified by defendant's counsel individually.

The pertinent question and answer of the interrogatories propounded by plaintiff upon defendant which was signed, under oath, by Douglas A. King, defendant's attorney, is as follows:

"14. What precautions or instructions did you or your assistants give to Sylvia Inzano concerning the dangers of falling or any other dangers associated with the taking of said eye drops.

"Answer: Mrs. Inzano was informed that her close vision would be blurred for 4-6 hours, and that her distance vision would not be affected."

Plaintiff's counsel called defendant for cross-examination as plaintiff's first witness. When defendant was asked the same question as in Interrogatory No. 14, defendant answered, "No instructions." Defendant further testified that he never told his attorney, King, that plaintiff was told that she would have blurring of her close vision for two to four hours and that his attorney never asked him this question.

Plaintiff's counsel then dismissed defendant as a witness subject to recall and announced that he wanted to call Attorney King as a witness. Defense counsel objected and a conference between the trial court and counsel occurred at the bench out of the hearing of the jury. The trial court held that it was improper trial procedure to use defendant's attorney as a witness to impeach defendant and that unless plaintiff's attorney could show the trial judge that he was wrong he was not going to allow plaintiff's counsel to call Attorney King as a witness. The trial court held that the proper procedure was to use the interrogatories to impeach defendant. Plaintiff's counsel did not cite any legal authority to the trial court to support his position that he could use Attorney King as a witness to impeach defendant's testimony. The trial court permitted plaintiff's counsel to recall defendant as a witness who was shown subject interrogatory and answer. Defendant testified that he had never seen them and that he had never given this answer to his attorney.

When defendant testified on direct examination, he stated that the eye drops given to plaintiff on December 10, 1982 would not have affected her vision while in his office and that, in his opinion, plaintiff was able to discern the "Private" lettering on the door to the cellar steps.

We hold that, pursuant to Civ. R. 33(A), an attorney is not permitted to answer interrogatories for an individual party. *Hensley* v. *Fairview Park Hospital* (C.P. 1970), 26 Ohio Misc. 128, 54 O.O. 2d 348, 265 N.E. 2d 800; *Pomeranz* v. *Hill* (M.C. 1970), 26 Ohio Misc. 185, 53 O.O. 2d 273, 265 N.E. 2d 562.

We further hold that, since subject interrogatory was not signed by defendant, it was not competent evidence and should not have been admitted into evidence. *Schuldt* v. *Associates Investment Co.* (1938), 61 Ohio App. 213, 15 O.O. 148, 22 N.E. 2d 572. However, this issue was not raised by defendant in a cross-appeal and does not affect this appeal.

R.C. 2317.02(A) provides that an attorney shall not testify concerning a communication made to him by his client in relation to his advice to his client unless his client expressly consents to such testimony and that if the client voluntarily testifies, the attorney may be compelled to testify on the same subject.

The Ohio Supreme Court has held that the legislature meant the word "subject," as used in this statute, to apply in its unlimited and unrestricted sense to the subject of the controversy, and not merely to the subject of the communications. Therefore, in Ohio, by voluntarily offering himself as a witness generally in his own behalf, the client waives all the protection which the law would otherwise have afforded to communications made by him to his attorney pertinent to the issue on trial,

and they are no longer privileged. *Spitzer* v. *Stillings* (1924), 109 Ohio St. 297, 142 N.E. 365; *Travelers Indemnity Co.* v. *Cochrane* (1951), 155 Ohio St. 305, 44 O.O. 302, 98 N.E. 2d 840; 44 Ohio Jurisprudence 3d (1983) 209, Evidence and Witnesses, Section 846.

In the *Spitzer* case, the court stated, in pertinent part, as follows: "The statute can serve no purpose except to expose perjury." *Id.* at 307, 142 N.E. at 368.

When subject interrogatory is compared to the testimony of defendant, a serious question arises whether perjury has been committed. If the answer to the interrogatory is truthful, defendant was perjuring himself by his testimony at the trial. If the defendant was telling the truth, then Attorney King was not truthful in his answer to Interrogatory No. 14.

Because Attorney King did not testify at the trial, this court cannot determine definitely whether perjury was committed or, if so, who committed such perjury.

The facts of this case appear to be unique and present a legal question of first impression. We have found no pertinent case in our research.

We hold under the facts of this case, pursuant to R.C. 2317.02(A), that Attorney King was not protected by R.C. 2317.02(A) and that plaintiff's counsel had the right to question Attorney King as to his answer to Interrogatory No. 14. Defendant denied that there was any communication between Attorney King and himself as to subject interrogatory.

We agree with the trial court in its decision in which the trial court refused to permit plaintiff's counsel to question Attorney King in the presence of the jury. However, we base our decision on a different reason than was given by the trial court. Our reason is our decision previously given that subject interrogatories were not properly executed and were not competent evidence.

The problem in this case was the following misconduct of Attorney King: (1) He improperly answered the interrogatories because Civ. R. 33(A) provides that such interrogatories should be answered by an individual party. (2) His answers to Interrogatory No. 14 were contrary to the testimony of defendant and another medical expert, namely, Dr. Mark R. Levine, who testified for defendant. Upon review of the entire record of this case, we find that there is no basis for Attorney King's answer to Interrogatory No. 14. In the preparation for the trial of this case, Attorney King either knew or should have known how defendant and Dr. Levine would testify in this case on what was a decisive issue in this case. Yet Attorney King did not notify plaintiff's counsel about any change in his answer to Interrogatory No. 14. (3) Attorney King's above-mentioned conduct raises the question of whether such conduct was an unscrupulous, deliberate circumvention of the purpose of the Civil Rules which is the search for the truth and to avoid surprises at the trial.

Our research has revealed no precedent for the procedure to be followed in a case like this probably because most attorneys would not indulge in such conduct. We feel that when a similar situation arises, the trial court should have an *in camera* hearing at which at least counsel for both sides should be present, and the offending attorney should be placed under oath and the opposing attorney should be permitted to cross-examine the offending attorney as to the answer or answers at issue. The basic purpose of such a hearing would be to determine in what way a party was prejudiced by an untruthful answer to an interrogatory by such attorney.

In the instant case, if the source of

Attorney King's information was defendant, then such information should be presented to the jury:

"Ordinarily, errors which arise during the course of a trial, which are not brought to the attention of the court by objection or otherwise, are waived and may not be raised upon appeal. * * *" *Stores Realty Co.* v. *Cleveland* (1975), 41 Ohio St. 2d 41, 43, 70 O.O. 2d 123, 124, 322 N.E. 2d 629, 630; 4 Ohio Jurisprudence 3d (1978) 298, 299, Appellate Review, Section 137. See *State* v. *Williams* (1977), 51 Ohio St. 2d 112, 5 O.O. 3d 98, 364 N.E. 2d 1264, vacated as to death penalty (1978), 438 U.S. 911.

We are inclined to hold that the trial court committed no error under this assignment of error. In the event that we are wrong in this decision, plaintiff's counsel did not furnish the trial court with the legal authority as to R.C. 2317.02(A) that has been previously cited in this opinion. Therefore, we would hold that plaintiff waived such error.

Furthermore, we hold that if there was error under this assignment of error, such error was not prejudicial to plaintiff. As we pointed out in our discussion of plaintiff's first assignment of error, the decisive issue in this case was the effect on the vision of plaintiff of the drops placed in her eyes. Defendant, who is a medical expert, testified that such drops did not affect the vision of plaintiff. Another medical expert testified likewise for defendant. Plaintiff did not produce any medical expert testimony, and there is no indication in the record of this case that plaintiff can produce any medical expert to testify contrary to defendant's testimony. We feel that if another trial was held and that plaintiff could not produce a medical expert to support her position, the jury verdict would be the same as in the instant case.

For the foregoing reasons, we overrule plaintiff's second assignment of error.

*Judgment affirmed.*

O'NEILL, P.J., concurs.

CASTLE, J., concurs in judgment only.

O'NEILL, P.J., and LYNCH, J., retired, both of the Seventh Appellate District, and CASTLE, J., retired, of the Twelfth Appellate District, sitting by assignment in the Eleventh Appellate District.