THE STATE EX REL. PLAIN DEALER PUBLISHING
COMPANY *v.* CITY OF CLEVELAND.

THE STATE EX REL. VINDICATOR PRINTING COMPANY *v.* CITY OF YOUNGSTOWN.

[Cite as *State ex rel. Plain Dealer Publishing Co. v. Cleveland,* 106 Ohio St.3d 70, 2005-Ohio-3807.]

(Nos. 2004–0448 and 2004–1765—Submitted April 26, 2005—Decided August 10, 2005.)

LUNDBERG STRATTON, J.

{¶ 1} These are mandamus cases in which relators request copies of police officer photographs. Because these records are peace-officer residential and familial information under R.C. 149.43(A)(7)(b) and exempt from disclosure under R.C. 149.43(A)(1)(p), we deny the writ.

*State ex rel. Plain Dealer Publishing Co. v. Cleveland,* Case No. 2004–0448

{¶ 2} Relator, Plain Dealer Publishing Company ("Plain Dealer"), publishes the Plain Dealer newspaper, which is circulated to the general public throughout the greater metropolitan area of respondent, the city of Cleveland, Ohio.

{¶ 3} Under General Police Order 1.3.08, Cleveland police officers must maintain current photograph-identification cards, and if the officers are not in uniform, they must display the identification cards on their clothing when they are in police or local court buildings. The Photo Unit of the Cleveland Police Division takes the pictures and prepares the identification cards, with new cards typically issued every five years.

{¶ 4} In September 2002, the Plain Dealer requested that the Cleveland Police Division permit it to examine and scan "the identification photographs of all uniformed Cleveland police officers." The city denied the Plain Dealer's request based on the city's claim that "the photographs are not public records under O.R.C. 149.43 and release would violate the officers' federal constitutional right to privacy."

{¶ 5} In December 2002, Cleveland notified the Plain Dealer that it was establishing a procedure in which the city would notify individual police officers when the Plain Dealer requested their photographs and seek written consent from the officers to release their photographs. Cleveland expressed its concern that "providing [the Plain Dealer] with the requested photographs without obtaining permission from each individual affected officer might constitute a civil-rights violation" that would subject the city to "numerous time-consuming and expensive lawsuits by individual police officers and/or their unions." The Plain Dealer questioned the city's reliance on constitutional privacy rights because "[u]niformed officers are visible on the streets daily, advertising by what they wear that they are police officers." Nevertheless, the Plain Dealer agreed to wait and see how the city's new procedure operated.

{¶ 6} In June 2003, the Plain Dealer received a press release from the Rotary Club of Cleveland notifying "Photo and News Editors" of a photograph opportunity. The Rotary Club stated that it would present its annual Medal of Valor awards on June 12, 2003, at a public ceremony to three Cleveland police officers and three Cleveland firefighters. The press release listed the three officers by name. The Rotary Club noted that the three officers were being honored for their actions in confronting and arresting armed robbery suspects and that "[e]ach recipient has been selected by his department chief and the Director of Public Safety in cooperation with the City of Cleveland."

{¶ 7} On June 11, 2003, the Plain Dealer requested that the Cleveland Police Department provide it with photographs of the June 12 Rotary Club honorees, including the three police officers. On July 14, 2003, the city denied the Plain Dealer's request because the officers had "declined to authorize release of their photograph[s]." The officers withheld consent because of their concerns for their safety and that of their families. Nevertheless, two officers did not object to being photographed during the June 12 Rotary Club ceremony.[1] In fact, one officer's picture from the ceremony appeared in the *Plain Dealer*.

{¶ 8} On November 2 and 3, 2003, the Plain Dealer published articles about the city's multimillion-dollar annual cost in paying overtime to its police officers for attending court hearings. The Plain Dealer reported that officers had received

---

1. One officer did not attend the ceremony because of the death of his grandfather.

overtime pay to attend hearings that had been canceled weeks before and that several officers in the same cases submitted overtime cards with dramatically different hours, but each received the full amount of overtime compensation he claimed.

{¶ 9} Shortly before the publication of these articles, on October 31, 2003, the Plain Dealer notified the city that it was "preparing reports about the overtime pay that some Cleveland police officers have received." The Plain Dealer requested access to view and copy photographs of five uniformed police officers who would be named in the articles. On November 17, 2003, the city denied the Plain Dealer's request because each of the named officers "declined to authorize release of [his] photograph." These officers declined to authorize release of their photographs because they were concerned for their own and their families' safety.

{¶ 10} On March 12, 2004, the Plain Dealer filed this action for a writ of mandamus to compel Cleveland to provide photographs of the eight police officers that it had requested in June and October 2003. Cleveland answered the complaint, and on May 26, 2004, we granted an alternative writ. *State ex rel. Plain Dealer Publishing Co. v. Cleveland*, 102 Ohio St.3d 1456, 2004-Ohio-2569, 809 N.E.2d 31. The parties filed evidence and briefs, and the National Fraternal Order of Police ("National FOP"), Fraternal Order of Police of Ohio, Inc. ("Ohio FOP") and Fraternal Order of Police, Cleveland Lodge No. 8 ("Cleveland Lodge No. 8") filed amici curiae briefs in support of the city's decision not to release the officers' photographs to the Plain Dealer.

{¶ 11} On September 29, 2004, we granted the Plain Dealer's request for oral argument. *State ex rel. Plain Dealer Publishing Co. v. Cleveland*, 103 Ohio St.3d 1459, 2004-Ohio-5056, 815 N.E.2d 676.

*State ex rel. Vindicator Printing Co. v. Youngstown,* Case No. 2004–1765

{¶ 12} On July 4, 2004, a crowd of about 200 people attended an illegal fireworks display in the city of Youngstown, Ohio, respondent. A riot broke out when Youngstown police officers ordered the crowd to disperse. Five police officers were injured, and three people were charged with assaulting police officers.

{¶ 13} One of the officers at the scene wrote a memorandum blaming in part the city administration for the riot because the city's deployment of police officers created "dangerous conditions" and "backup officers [were] miles away when officers [were] in need of assistance." The officer distributed the memorandum to the mayor, police chief, and the internal-affairs unit of the Youngstown Police Department. The city administration replied that the officer's memorandum had some merit but had exaggerated what had occurred.

{¶ 14} Relator, Vindicator Printing Company ("Vindicator"), is an Ohio corporation that owns and publishes the Vindicator, a newspaper that is circulated throughout the greater metropolitan area of Youngstown. In preparing a July 20, 2004 newspaper article describing the officer's memorandum and the city's response, the Vindicator requested that the city provide it with a photograph of the officer. The city refused.

{¶ 15} In September 2004, a grand jury indicted several persons for crimes arising from the July 4 riot. In October 2004, the Vindicator again requested that the city provide it with the officer's photograph, and the city again refused. The Youngstown Police Department had notified the officer of the requests, and he advised that if it was standard departmental practice not to release his photograph, then the police department should not release it.

{¶ 16} On October 20, 2004, the Vindicator filed this action for a writ of mandamus to compel Youngstown to permit inspection and copying of the requested police officer photograph. On October 28, the Vindicator moved to consolidate this case with *State ex rel. Plain Dealer Publishing Co. v. Cleveland,* case No. 2004–0448. The city filed an answer to the Vindicator's complaint, but did not respond to the motion to consolidate.

{¶ 17} On December 28, 2004, we granted the Vindicator's motion and ordered case No. 2004–1765, *State ex rel. Vindicator Printing Co. v. Youngstown,* consolidated with case No. 2004–0448, *State ex rel. Plain Dealer Publishing Co. v. Cleveland,* for purposes of oral argument and decision. 104 Ohio St.3d 1436, 2004-Ohio-7079, 819 N.E.2d 1120. We also granted an alternative writ and ordered evidence and briefing. Id. The parties submitted evidence and briefs. Amici curiae the Columbus Dispatch, the Copley Press, Inc., Beacon Journal Publishing Company, the Associated Press, the Cincinnati Enquirer, E.W. Scripps Company, Cox Ohio Publishing, the Blade, the Ohio Newspaper Association, the Ohio Coalition for Open Government, the American Civil Liberties Union of Ohio Foundation, the Committee Against Sexual Harassment, and Copwatch filed briefs in support of the Vindicator.

## Oral Argument

{¶ 18} After these cases were consolidated, oral argument was held on April 26, 2005. The causes are now before us for a consideration of the merits of the Plain Dealer's and the Vindicator's mandamus claims.

## Mandamus: R.C. 149.43

{¶ 19} The Plain Dealer requests a writ of mandamus to compel Cleveland to provide it with eight photographs of police officers. The Vindicator requests a writ of mandamus to compel Youngstown to provide it with a photograph of one

police officer. The Plain Dealer and the Vindicator claim entitlement to the requested photographs under the Public Records Act.

{¶ 20} "Mandamus is the appropriate remedy to compel compliance with R.C. 149.43, Ohio's Public Records Act." *State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Info. Network, Inc. v. Dupuis,* 98 Ohio St.3d 126, 2002-Ohio-7041, 781 N.E.2d 163, ¶ 11; R.C. 149.43(C). We construe R.C. 149.43 liberally in favor of broad access and resolve any doubt in favor of disclosing records. *State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Info. Network, Inc. v. Cincinnati Bd. of Edn.,* 99 Ohio St.3d 6, 2003-Ohio-2260, 788 N.E.2d 629, ¶ 10.

{¶ 21} " 'Public record' means records kept by any public office." R.C. 149.43(A)(1). The Cleveland Division of Police keeps the photographs used for its police-identification cards. The Youngstown Police Department uses the photographs for police-identification cards and has put them in a "mug" book available for use by people who have complaints against officers. It is undisputed that a police department is a public office. R.C. 149.011(A); *State ex rel. Multimedia, Inc. v. Snowden* (1995), 72 Ohio St.3d 141, 142, 647 N.E.2d 1374.

{¶ 22} Moreover, despite Cleveland's assertion to the contrary, the photographs of Cleveland and Youngstown police officers constituted records for purposes of R.C. 149.43. " 'Records' includes any document * * * created * * * by * * * any public office of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office." R.C. 149.011(G). The Cleveland photographs are created by the Cleveland Police Division and document the policy expressed in General Police Order 1.3.08 that police officers maintain current photographic identification cards and display them in police and court buildings when not in uniform. The Youngstown photographs are created by the Youngstown Police Department and document the policies that police officers have photographic identification cards and that the photographs are available for use by citizens to register complaints against police.

{¶ 23} The Cleveland photographs, when incorporated into the police-identification cards, are used by Cleveland police officers to gain access to certain buildings and to identify themselves as police officers when any person requests identification. See *Dupuis,* 98 Ohio St.3d 126, 2002-Ohio-7041, 781 N.E.2d 163, ¶ 12–14 (proposed agreement to settle investigation of city's police department constituted a public record for purposes of R.C. 149.43(A)(1) and 149.011(G)); Section 4.13 of the Rules and Regulations for the Conduct and Discipline of Officers and Employees of the Cleveland Division of Police ("Personnel shall furnish their name, rank, and badge number to any person who may request it"); cf. *Henderson v. Chattanooga* (Tenn.App.2003), 133 S.W.3d 192, 204 ("In light of the very broad definition of public records and giving the Act a liberal construc-

tion, as we must, we cannot say that when a photograph of an officer is taken and placed in his or her personnel file, that it was not 'made * * * in connection with the transaction of official business by any governmental agency' "). The Youngstown photographs can be used by the police department to permit citizens to identify police officers in order to register a complaint.

{¶ 24} Therefore, the requested photographs are records under R.C. 149.011(G) and must be disclosed under R.C. 149.43 unless an exception to disclosure applies.

### Exemption for Peace–Officer Residential and Familial Information

{¶ 25} The cities assert that the requested photographs are exempt from disclosure under R.C. 149.43(A)(1)(p), which excepts "[p]eace officer, firefighter, or EMT [emergency medical technician] residential and familial information" from the definition of "[p]ublic record." At issue is the R.C. 149.43(A)(7) definition of "[p]eace officer, firefighter, or EMT residential and familial information," which provides:

{¶ 26} "(7) 'Peace officer, firefighter, or EMT residential and familial information' means either of the following:

{¶ 27} "(a) Any information maintained in a personnel record of a peace officer, firefighter, or EMT that discloses any of the following:

{¶ 28} "(i) The address of the actual personal residence of a peace officer, firefighter, or EMT, except for the state or political subdivision in which the peace officer, firefighter, or EMT resides;

{¶ 29} "(ii) Information compiled from referral to or participation in an employee assistance program;

{¶ 30} "(iii) The social security number, the residential telephone number, any bank account, debit card, charge card, or credit card number, or the emergency telephone number of, or any medical information pertaining to, a peace officer, firefighter, or EMT;

{¶ 31} "(iv) The name of any beneficiary of employment benefits, including, but not limited to, life insurance benefits, provided to a peace officer, firefighter, or EMT by the peace officer's, firefighter's, or EMT's employer;

{¶ 32} "(v) The identity and amount of any charitable or employment benefit deduction made by the peace officer's, firefighter's, or EMT's employer from the peace officer's, firefighter's, or EMT's compensation unless the amount of the deduction is required by state or federal law;

{¶ 33} "(vi) The name, the residential address, the name of the employer, the address of the employer, the social security number, the residential telephone number, any bank account, debit card, charge card, or credit card number, or the

emergency telephone number of the spouse, a former spouse, or any child of a peace officer, firefighter, or EMT.

{¶ 34} "(b) *Any record that identifies a person's occupation as a peace officer, firefighter, or EMT* other than statements required to include the disclosure of that fact under the campaign finance law." (Emphasis added.)

{¶ 35} "A court's preeminent concern in construing a statute is the legislative intent in enacting a statute." *State ex rel. Van Dyke v. Public Emp. Retirement Bd.,* 99 Ohio St.3d 430, 2003-Ohio-4123, 793 N.E.2d 438, ¶ 27. To determine the legislative intent, we must review the language of the statute, " 'reading undefined words and phrases in context and construing them in accordance with the rules of grammar and common usage.' " *State ex rel. Pontillo v. Public Emp. Retirement Sys. Bd.,* 98 Ohio St.3d 500, 2003-Ohio-2120, 787 N.E.2d 643, ¶ 41, quoting *State ex rel. Portage Lakes Edn. Assn., OEA/NEA v. State Emp. Relations Bd.,* 95 Ohio St.3d 533, 2002-Ohio-2839, 769 N.E.2d 853, ¶ 36.

{¶ 36} Read in accordance with the rules of grammar and common usage, R.C. 149.43(A)(7)(b) manifestly includes the requested police officer photographs because they identify their occupation as peace officers. The Plain Dealer and the Vindicator do not deny that the language of R.C. 149.43(A)(7)(b) includes the requested photographs within the exemption for peace-officer residential and familial information.

{¶ 37} Instead, the Plain Dealer and the Vindicator argue that the "General Assembly could not have intended a literal construction" of R.C. 149.43(A)(7)(b) because that would obviate the R.C. 149.43(A)(7)(a) subpart of the same exemption and the exemption for confidential law-enforcement investigatory records in R.C. 149.43(A)(2). The newspapers also argue that a literal construction would nullify other laws generally requiring peace officers to provide proper identification upon demand and would be absurd if applied to uniformed police officers. The Plain Dealer further claims that subsequent legislative amendments evince the General Assembly's intent to retain the court's holdings concerning police personnel records, that the city has waived any exemptions, and that access may be required under the United States and Ohio Constitutions.

{¶ 38} The Plain Dealer's and the Vindicator's assertions are meritless. R.C. 149.43(A)(7)(b) unambiguously exempts the requested police officer photographs because they identify the officers' occupation as peace officers. R.C. 149.43(A)(1)(p). "If a review of the statute conveys a meaning that is clear, unequivocal, and definite, the court need look no further." *Columbus City School Dist. Bd. of Edn. v. Wilkins,* 101 Ohio St.3d 112, 2004-Ohio-296, 802 N.E.2d 637, ¶ 26. We need not resort to statutory construction when the statute is unambiguous. *State v. Evans,* 102 Ohio St.3d 240, 2004-Ohio-2659, 809 N.E.2d 11, ¶ 14. Instead, "our inquiry begins with the statutory text, and ends there as well if the

text is unambiguous." *BedRoc Ltd., LLC v. United States* (2004), 541 U.S. 176, 183, 124 S.Ct. 1587, 158 L.Ed.2d 338. Thus, when a statute is unambiguous in its terms, courts must apply it rather than interpret it. *Specialty Restaurants Corp. v. Cuyahoga Cty. Bd. of Revision,* 96 Ohio St.3d 170, 2002-Ohio-4032, 772 N.E.2d 1165, ¶ 11.

{¶ 39} Moreover, even were we to use the interpretative rules that the Plain Dealer and the Vindicator request, a different conclusion would not be warranted.

{¶ 40} Admittedly, we have on occasion noted that "the natural meaning of words is not always conclusive as to the construction of statutes" and that no portion of a statute should be treated as superfluous unless it is manifestly necessary to do so. *D.A.B.E., Inc. v. Toledo–Lucas Cty. Bd. of Health,* 96 Ohio St.3d 250, 2002-Ohio-4172, 773 N.E.2d 536, ¶ 22, 26. But surplusage does not always produce ambiguity, and the plain meaning of the statute is always preferred. *Lamie v. United States Trustee* (2004), 540 U.S. 526, 536, 124 S.Ct. 1023, 157 L.Ed.2d 1024.

{¶ 41} In fact, R.C. 149.43(A)(7)(b) does not render R.C. 149.43(A)(7)(a) or R.C. 149.43(A)(2) superfluous. For example, a record containing debit card information of a former spouse of a peace officer would not necessarily identify a person's occupation as a peace officer under R.C. 149.43(A)(7)(b), but it would fall within the exemption for peace-officer familial and residential information as defined in R.C. 149.43(A)(7)(a). And a confidential law-enforcement investigatory record as defined by R.C. 149.43(A)(2) exempts information other than that defined in R.C. 149.43(A)(7)(b), e.g., identities of uncharged suspects.

{¶ 42} Nor does R.C. 149.43(A)(7)(b) nullify other regulations and policies requiring peace officers to identify themselves to persons upon request. See, e.g., Ohio Adm.Code 4301:1–1–61; Rules and Regulations for the Conduct and Discipline of Officers and Employees of the Cleveland Division of Police, Section 4.13 ("Personnel shall furnish their name, rank and badge number to any person who may request it"); Youngstown Police Department General Orders Manual, General Order 26, Rule 19 ("Employees shall furnish their badge number to any person requesting that information"). Those regulations serve the related purpose of protecting the public from persons impersonating officers. That purpose could be subverted if people have access under R.C. 149.43 to the same photographs that Cleveland and Youngstown use to prepare police identification cards.

{¶ 43} Consequently, instead of nullifying these laws, R.C. 149.43(A)(7)(b) complements them.

{¶ 44} Furthermore, the application of the exemption to photographs of uniformed police officers does not create an absurd result. The General Assembly makes no distinction in R.C. 149.43(A)(7)(b) between uniformed and nonuniformed officers, and we will not construe it to imply one. See *State v. Hughes*

(1999), 86 Ohio St.3d 424, 427, 715 N.E.2d 540 ("In construing a statute, we may not add or delete words"). Cleveland introduced evidence that its undercover officers come from its ranks of uniformed police officers and that releasing photographs of uniformed police officers would jeopardize the city's ability to perform undercover work. Therefore, the exemption protects police and their families and assists the police in their investigative functions.

{¶ 45} In addition, subsequent amendments to R.C. 149.43 do not indicate any intent by the General Assembly to require disclosure of photographs of police officers. The Plain Dealer relies on *Spitzer v. Stillings* (1924), 109 Ohio St. 297, 142 N.E. 365, paragraph four of the syllabus, in which we held: "Where a statute is construed by a court of last resort having jurisdiction, and such statute is thereafter amended in certain particulars, but remains unchanged so far as the same has been construed and defined by the court, it will be presumed that the Legislature was familiar with such interpretation at the time of such amendment, and that such interpretation was intended to be adopted by such amendment as a part of the law, unless express provision is made for a different construction." *Spitzer* is inapplicable because we had not interpreted R.C. 149.43(A)(7) before the General Assembly enacted R.C. 149.43(A)(7)(b), which became effective in June 2000. 2000 Sub.H.B. No. 539, 148 Ohio Laws, Part III, 6121. This case provides the court with our first opportunity to consider this exemption.

{¶ 46} Moreover, the history immediately preceding the General Assembly's enactment of R.C. 149.43(A)(7)(b) supports the exemption of the requested police officer photographs.

{¶ 47} In 1998, the United States Court of Appeals for the Sixth Circuit held that police officers have a constitutionally protected privacy right in information contained in their personnel files, *including drivers' licenses containing their photographs,* which required the balancing of the interests of the officers against the interests of the city in releasing that information. *Kallstrom v. Columbus* (C.A.6, 1998), 136 F.3d 1055, 1063–1064. The court further held that "officers are entitled to notice and an opportunity to be heard prior to the release of private information contained in their personnel files only where the disclosure of the requested information could potentially threaten the officers' and their families' personal security." Id. at 1069.

{¶ 48} In April 1999, we relied on *Kallstrom* to hold that police officers' files that contain the names of the officers' children, parents, home addresses, telephone numbers, beneficiaries, medical information, and similar records are exempt from disclosure under the Public Records Act by the constitutional right of privacy. *State ex rel. Keller v. Cox* (1999), 85 Ohio St.3d 279, 282, 707 N.E.2d 931.

{¶ 49} On June 29, 1999, following *Kallstrom* and *Keller*, the General Assembly passed Am.Sub.S.B. No. 78, which enacted the R.C. 149.43(A)(1)(p) exemption for peace-officer residential and familial information. 148 Ohio Laws, Part IV, 8623, 8624–8625, eff. December 16, 1999. The amendment defined the exemption to include the items now specified in R.C. 149.43(A)(7)(a).

{¶ 50} In April 2000, this court—citing the constitutional right of privacy—held that personal information about children who use a city's recreational facilities was exempt from disclosure under R.C. 149.43. *State ex rel. McCleary v. Roberts* (2000), 88 Ohio St.3d 365, 371–372, 725 N.E.2d 1144.

{¶ 51} In May 2000, effective June 2000, the General Assembly amended R.C. 149.43(A)(7) to include subsection b. Sub.H.B. No. 539, 148 Ohio Laws., Part III, 6119.

{¶ 52} Based on this historical context, the General Assembly could have been justifiably concerned that the disclosure of certain personal information of police officers might endanger them and their families and compromise their constitutional privacy rights. The General Assembly could have reasonably concluded that the exemptions now contained in R.C. 149.43(A)(7)(a) were insufficient, necessitating the addition of subsection b in June 2000. Photographs in particular have been protected by the General Assembly in a different context. Cf. R.C. 4501.27(F)(5), which includes "an individual's photograph or digital image" within the definition of "sensitive personal information" that is to be disclosed by the Bureau of Motor Vehicles only under extremely limited circumstances, e.g., with the express consent of the person whose photograph is requested. R.C. 4501.27(B)(3)(a). The officers whose photographs were requested by the Plain Dealer and the Vindicator did not authorize the release of their photographs.

{¶ 53} Moreover, the Vindicator's suggested interpretation of R.C. 149.43(A)(7)(b) as limited to the specific information listed in subsection (A)(7)(a) but in records other than *personnel* records is not supported by the statutory language. Reading the exemption in this manner would require rewriting subsection (A)(7)(b). This we cannot do. *State ex rel. Lee v. Karnes,* 103 Ohio St.3d 559, 2004-Ohio-5718, 817 N.E.2d 76, ¶ 25.

{¶ 54} Additionally, even if we disagreed with any policy supporting the General Assembly's enactment of R.C. 149.43(A)(7)(b), "the General Assembly is the ultimate arbiter of public policy." *Dupuis,* 98 Ohio St.3d 126, 2002-Ohio-7041, 781 N.E.2d 163, ¶ 21.

{¶ 55} Finally, the Plain Dealer and the Vindicator argue that construing the R.C. 149.43(A)(7)(b) exemption literally to include *any* records identifying persons as police officers would prohibit access to many records that we have heretofore held to be subject to disclosure under the Public Records Act—a result that the General Assembly could not have intended. See, e.g., *Keller,* 85

Ohio St.3d at 282, 707 N.E.2d 931 (internal-affairs records "that reflect on discipline, citizen complaints, or how an officer does her or his job"); *State ex rel. Ohio Patrolmen's Benevolent Assn. v. Mentor* (2000), 89 Ohio St.3d 440, 444, 732 N.E.2d 969 (police personnel records); *State ex rel. Rasul–Bey v. Onunwor* (2002), 94 Ohio St.3d 119, 120, 760 N.E.2d 421 (routine offense and incident reports); *State ex rel. Plain Dealer Publishing Co. v. Cleveland* (1996), 75 Ohio St.3d 31, 33, 661 N.E.2d 187 (resumes of police-chief applicants).

{¶ 56} In so arguing, the Plain Dealer and the Vindicator attempt to expand this case beyond the narrow issue before us: the applicability of the exemption to *police officer photographs*. Consequently, we will not address the applicability of the exemption to police records not at issue. This is consistent with our general rule that we will not issue advisory opinions. *State ex rel. Essig v. Blackwell,* 103 Ohio St.3d 481, 2004-Ohio-5586, 817 N.E.2d 5, ¶ 34; see, also, *Cincinnati Gas & Elec. Co. v. Pub. Util. Comm.,* 103 Ohio St.3d 398, 2004-Ohio-5466, 816 N.E.2d 238, ¶ 17, quoting *Fortner v. Thomas* (1970), 22 Ohio St.2d 13, 14, 51 O.O.2d 35, 257 N.E.2d 371 (" 'It has become settled judicial responsibility for courts to refrain from giving opinions on abstract propositions and to avoid the imposition by judgment of premature declarations or advice upon potential controversies' "). We need decide only the case presently before us.

{¶ 57} Therefore, because the plain language of R.C. 149.43(A)(7)(b) includes police officer photographs within the exemption for peace-officer residential and familial information, the city has no duty to provide copies of the photographs to the Plain Dealer.

## Constitutional Right of Privacy

{¶ 58} Cleveland, Youngstown, and amici police labor unions also claim that the requested photographs are exempt from disclosure based on the officers' constitutional right of privacy. Constitutional privacy rights are "state or federal law" under R.C. 149.43(A)(1)(v), which prohibits the disclosure of certain records. *State ex rel. WBNS TV, Inc. v. Dues,* 101 Ohio St.3d 406, 2004-Ohio-1497, 805 N.E.2d 1116, ¶ 41. Because of the manifest applicability of R.C. 149.43(A)(1)(p) and (A)(7)(b) to exempt these photographs, however, we need not address this claim. Id. at ¶ 46, quoting *State ex rel. Nationwide Mut. Ins. Co. v. Henson,* 96 Ohio St.3d 33, 2002-Ohio-2851, 770 N.E.2d 580, fn. 2 (" 'courts decide constitutional issues only when absolutely necessary' ").

## Waiver of Exemptions

{¶ 59} The Plain Dealer and the Vindicator next assert that even assuming that the claimed exemptions apply, the cities waived their right to rely on those records by adopting policies affirmatively making identities of uniformed police officers available to the public.

{¶ 60} This assertion lacks merit. " 'Absent evidence that respondents have already disclosed the investigatory records to the public and thereby waived application of certain exemptions, the exemptions are fully applicable.' " *State ex rel. Dillery v. Icsman* (2001), 92 Ohio St.3d 312, 316, 750 N.E.2d 156, quoting *State ex rel. WLWT–TV5 v. Leis* (1997), 77 Ohio St.3d 357, 361, 673 N.E.2d 1365. There is no evidence here that Cleveland or Youngstown has already disclosed the *requested photographs* to the public.

{¶ 61} Moreover, the fact that some members of the public may already know the physical characteristics of the police officers does not waive the exemptions. See *State ex rel. Ohio Patrolmen's Benevolent Assn. v. Mentor* (2000), 89 Ohio St.3d 440, 447, 732 N.E.2d 969 (public knowledge of identity of uncharged suspect did not waive the city's right to rely on uncharged-suspect exemption). As amicus Cleveland Lodge No. 8 observes, "there is a substantial difference between an individual being identified as a police officer due to his uniform, vehicle, or badge number, and being identified by having his or her photograph published throughout Ohio." See, also, *United States Dept. of Defense v. Federal Labor Relations Auth.* (1994), 510 U.S. 487, 500, 114 S.Ct. 1006, 127 L.Ed.2d 325 ("An individual's interest in controlling the dissemination of information regarding personal matters does not dissolve simply because that information may be available to the public in some form").

{¶ 62} Therefore, Cleveland and Youngstown did not waive their right to rely on exemptions to preclude disclosure of the requested photographs.

## Constitutional Considerations

{¶ 63} Finally, the Plain Dealer and the Vindicator assert that R.C. 149.43(A)(7)(b) would be unconstitutional if interpreted to inhibit the public's constitutional right of access to information concerning identities of uniformed police officers. The Plain Dealer cites several cases that refer to a "constitutional right of access to information concerning crime in the community, and to information relating to activities of law enforcement agencies." *Houston Chronicle Publishing Co. v. Houston* (Tex.Civ.App.1975), 531 S.W.2d 177, 186; *Caledonian Record Publishing Co. v. Walton* (1990), 154 Vt. 15, 21, 573 A.2d 296; *Sheridan Newspapers, Inc. v. Sheridan* (Wyo.1983), 660 P.2d 785, 795.

{¶ 64} Neither the Plain Dealer nor the Vindicator, however, raised this constitutional claim in its complaint. Nor did they seek to amend their complaints to raise this claim. Alternative writs were granted based on the allegations of the complaints, and evidence was presented by the parties without notice that the claim was being raised. Under these circumstances, we will not consider the merits of this improperly raised claim. See *State ex rel. Massie v. Gahanna–Jefferson Public Schools Bd. of Edn.* (1996), 76 Ohio St.3d 584, 589, 669 N.E.2d 839; *State ex rel. Miller v. Reed* (1999), 87 Ohio St.3d 159, 160, 718 N.E.2d 428

("we need not address the merits of Miller's constitutional claim because Miller did not raise this issue in his complaint or amend his complaint to include this claim, and appellees did not expressly or impliedly consent to litigation of this claim").

{¶ 65} Further, protecting this personal information about police officers from disclosure is no more offensive than protecting similar personal information in the custody of the Bureau of Motor Vehicles. See R.C. 4501.27.

{¶ 66} And although both the Plain Dealer and the Vindicator cite *Richmond Newspapers, Inc. v. Virginia* (1980), 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973, in support of their constitutional claim, that case is inapplicable. In *Richmond Newspapers*, the United States Supreme Court held that the First Amendment prohibits the "government from summarily closing courtroom doors which had long been open to the public at the time that Amendment was adopted." Id. at 576, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973. The facts here are considerably different. See, e.g., *Calder v. Internal Revenue Serv.* (C.A.5, 1989), 890 F.2d 781, 783 ("no Supreme Court case has applied the two-tier analysis [of *Richmond Newspapers* and comparable cases] which looks for [a] history of openness and examines the significant role access plays in the judicial process to areas other than criminal proceedings").

## Conclusion

{¶ 67} Based on the manifest clarity and applicability of R.C. 149.43(A)(1)(p) and 149.43(A)(7)(b), we deny the writs. The Plain Dealer and the Vindicator are not entitled to the requested police officer photographs.

Writs denied.

MOYER, C.J., RESNICK, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

PFEIFER, J., concurs in part and dissents in part.

---

**PFEIFER, J., concurring in part and dissenting in part.**

{¶ 68} I concur in the bulk of the majority opinion. I write separately because not every picture maintained by the police departments in this case is an exception to the Public Records Act.

{¶ 69} The majority opinion states, "R.C. 149.43(A)(7)(b) unambiguously exempts the requested police officer photographs because they identify the officers' occupation as peace officers." Unquestionably, pictures of police officers in uniforms identify them as peace officers. Pictures that do not depict officers in their uniforms, however, do not "identify the officers' occupation as peace officers." A caption in a newspaper would identify the person in the nonuni-

formed picture as a peace officer, but the Plain Dealer and the Vindicator are not seeking captions; they are seeking pictures. I dissent to the extent that the majority opinion enables the police departments in this case to circumvent the Public Records Act by not releasing pictures of nonuniformed police officers.

––––––––––

Baker & Hostetler, L.L.P., and David L. Marburger, for relator Plain Dealer Publishing Company.

Subodh Chandra, Cleveland Director of Law, Barbara A. Langhenry, Chief Assistant Director of Law, and Thomas L. Anastos, Assistant Director of Law, for respondent city of Cleveland.

Gittes & Schulte, and Frederick M. Gittes; Baker & Hostetler, L.L.P., and David L. Marburger, for relator Vindicator Printing Company.

Iris Torres Guglucello, Youngstown Law Director, for respondent city of Youngstown.

Crabbe, Brown & James, L.L.P., Larry H. James, and Laura MacGregor Comek, urging denial of the writ in case No. 2004–0448 for amicus curiae National Fraternal Order of Police.

Paul L. Cox, Chief Counsel, Fraternal Order of Police of Ohio, Inc., urging denial of the writ in case No. 2004–0448 for amicus curiae Fraternal Order of Police of Ohio, Inc.

Faulkner, Muskovitz & Phillips, L.L.P., Robert M. Phillips, and Ryan J. Lemmerbrock, urging denial of the writ in case No. 2004–0448 for amicus curiae Fraternal Order of Police, Cleveland Lodge No. 8.

Walter & Haverfield, L.L.P., and Kenneth A. Zirm, urging granting of the writ in case No. 2004–1765 for amici curiae the Columbus Dispatch, the Copley Press, Inc., Beacon Journal Publishing Company, the Associated Press, the Cincinnati Enquirer, E.W. Scripps Company, Cox Ohio Publishing, the Blade, the Ohio Newspaper Association, and the Ohio Coalition for Open Government.

Marshall & Morrow, L.L.C., John S. Marshall, and Edward R. Forman, urging granting of the writ in case No. 2004–1765 for amici curiae the American Civil Liberties Union of Ohio Foundation, the Committee Against Sexual Harassment, and Copwatch.