OPINION
{¶ 1} Plaintiff-appellant, National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), appeals from a judgment of the Ohio Court of Claims granting the motion to compel discovery of defendants-appellees, the State of Ohio and Ohio State University Board of Trustees' ("OSU"). Because the discovery sought is not protected by the attorney-client privilege or work product doctrine, we affirm.
 {¶ 2} National Union filed a complaint against OSU alleging breach of contract and seeking reimbursement or indemnification for approximately $3,500,000 that National Union paid to settle 17 "Scott-Pontzer/Ezawa" claims. National Union's claims arise from a number of insurance policies it issued to OSU from 1996 through 2001, each of which had limits of liability in the amount of $1,000,000, as well as deductibles in the amount of either $50,000 or $1,000,000. National Union's reimbursement claims are based on "the Deductible Coverage Endorsement — Form A" of each policy, which provides "You [OSU] must reimburse us in accordance with this endorsement for any payment we make in good faith on behalf of any person or organization insured under any policy to which this endorsement applies." OSU refused to pay the deductibles, and in answering the complaint it asserted an affirmative defense that National Union breached its fiduciary duty to act in good faith.
 {¶ 3} OSU served upon National Union requests for production of the entire claims file for each underlying claim that National Union settled, including attorney opinions and advice. Refusing to produce the requested documents, National Union instead asserted the documents were irrelevant and protected from discovery based on the attorney-client privilege and work product doctrine. On September 16, 2004, OSU filed a motion to compel production; National Union filed a cross-motion for a protective order. On November 16, 2004, the trial court granted OSU's motion to compel. The court concluded the requested documents were not protected, and it ordered National Union to produce the documents within 30 days. National Union appeals, assigning the following errors:
ASSIGNMENT OF ERROR NO. 1
THE TRIAL COURT ERRED BY EXTENDING BOONE AND MOSKOVITZ TO ALLOW DISCOVERY OF PRIVILEGED INFORMATION CONTAINED IN NATIONAL UNION'S CLAIM FILES IN THIS BREACH OF CONTRACT ACTION FOR DEDUCTIBLE REIMBURSEMENTS WHERE THERE ARE NO ALLEGATIONS THAT NATIONAL UNION DENIED COVERAGE IN BAD FAITH AND, IN FACT, NATIONAL UNION PROVIDED COVERAGE AND PAID ALL CLAIMS.
ASSIGNMENT OF ERROR NO. 2
THE TRIAL COURT ERRED BY ORDERING WHOLESALE PRODUCTION OF NATIONAL UNION'S CLAIMS FILES BY RELYING ON BOONE AND MOSKOVITZ BECAUSE, SINCE THAT AUTHORITY IS INAPPLICABLE, CERTAIN DOCUMENTATION IN THE FILES FOR WHICH THE ATTORNEY CLIENT AND WORK PRODUCT PRIVILEGES HAVE BEEN ASSERTED ARE PRESUMPTIVELY PROTECTED FROM DISCLOSURE AND HAVE NOT BEEN WAIVED.
ASSIGNMENT OF ERROR NO. 3
EVEN IF BOONE AND MOSKOVITZ WERE APPLICABLE, WHICH THEY ARE NOT, THE TRIAL COURT ERRED BY ORDERING NATIONAL UNION TO PRODUCE PRIVILEGED INFORMATION WITHOUT CONDUCTING AN IN CAMERA INSPECTION, THEREBY IGNORING THE PROTECTIONS MANDATED BY THE SUPREME COURT OF OHIO TO GUARD AGAINST THE UNWARRANTED DISCLOSURE OF SUCH INFORMATION.
 {¶ 4} The standard of review applied in discovery disputes involving privilege varies among courts. Whether, however, we apply a de novo standard of review or an abuse of discretion standard, the end result is the same: neither the attorney-client privilege nor work product doctrine protects National Union's claims files from discovery under the circumstances of this case.
 {¶ 5} In its first assignment of error, National Union contends the trial court erred in ordering full disclosure of the claims files pursuant to Boone v. Vanliner Ins. Co. (2001), 91 Ohio St.3d 209 andMoskovitz v. Mt. Sinai Med. Ctr. (1994), 69 Ohio St.3d 638. The trial court concluded that, because OSU alleged National Union lacked good faith in settling the claims that gave rise to National Union's complaint, neither the attorney-client privilege nor work product doctrine precluded discovery of the claims files.
 {¶ 6} The attorney-client privilege exempts from discovery certain communications between attorneys and their clients in the course of seeking or rendering legal advice. Boone, supra. Its purpose is to encourage frank communication between the attorney and client, thereby promoting broader public interest in the observance of the law and administration of justice. Id. The work product doctrine generally protects all materials prepared in anticipation of trial. Id. Its purpose is to prevent opposing attorneys from taking undue advantage of his or her adversary's efforts in preparation for litigation. Id.
 {¶ 7} In Moskovitz, the plaintiffs sought an award of prejudgment interest pursuant to R.C. 1343.03(C) after receiving a substantial jury award for a medical malpractice claim. To recover prejudgment interest, the plaintiffs had to prove the opposing party did not make a good faith effort to settle. R.C. 1343.03. In support of their prejudgment interest claim, the plaintiffs sought the insurer's claims file for the underlying case, including attorney-client communications and work product materials. The Ohio Supreme Court held that "[i]n an R.C. 1343.03(C) proceeding for prejudgment interest, neither the attorney-client privilege nor the so-called work product exception precludes discovery of the contents of an insurer's claims file. The only privileged matters contained in the file are those that go directly to the theory of defense of the underlying case in which the decision or verdict has been rendered." Moskovitz, at paragraph three of the syllabus. Moskovitz thus established an "exception" to the attorney-client privilege. Boone, supra (noting that "Moskovitz sets forth an exception to the privilege" as opposed to a waiver of the privilege); Radovanic v. Cossler (2000),140 Ohio App.3d 208 (holding that in an action for prejudgment interest, neither the attorney-client privilege nor the work product doctrine precludes discovery of the contents of an insurer's claims files).
 {¶ 8} In the subsequent case of Boone, the insured sued the insurer alleging bad faith denial of coverage for uninsured or underinsured benefits. To support the bad faith claim, the insured sought discovery of the insurer's claims file. The insurer moved for a protective order, asserting that certain documents were protected from discovery by the attorney-client privilege, the work product doctrine, or both. Relying onMoskovitz, the court held that "in an action alleging bad faith denial of insurance coverage, the insured is entitled to discover claims file materials containing attorney-client communications related to the issue of coverage that were created prior to the denial of coverage." Boone, at 2132-14. As the court clarified, materials tending to demonstrate lack of good faith are not privileged and are discoverable, regardless of the status of the underlying claim. Id.
 {¶ 9} The court further explained, stating that "[l]ike the trial court, we find that the rationale behind our holding in Moskovitz is applicable to actions alleging bad faith denial of coverage. That is, claims file materials that show an insurer's lack of good faith in denying coverage are unworthy of protection." Id. at 213. Moreover, materials protected by the attorney-client privilege and those protected by the work product doctrine are to be treated similarly, there being no basis for distinguishing the materials. Garg v. State Automobile MutualIns. Co., 155 Ohio App.3d 258, 2003-Ohio-5960, ¶ 16 (stating that theBoone court's unequivocal adoption of the rationale in Moskovitz, which stated that both attorney-client communications and work product materials are unworthy of protection, indicates the materials are to be treated similarly); Hahn's Electric Co. v. Cochran, Franklin App. No. 01AP-1391, 2002-Ohio-5009 (recognizing that an insured alleging bad faith denial of coverage is entitled to discover its insurer's claims files); cf. Garcia v. O'Rourke, Gallia App. No. 02CA16, 2003-Ohio-2780 (declining to extend the exception where there was no allegation of bad faith or even a lack of good faith, and concluding the trial court improperly allowed discovery of previous settlement documents to determine if the children "benefited" from the previous settlement).
 {¶ 10} Because OSU's answer raises the issue of lack of good faith, the rationale of Boone suggests the claims files are discoverable. National Union, however, contends that because its action against OSU is strictly a breach of contract action, and because it did not deny coverage to any claimants, Boone does not apply. National Union arguesMoskovitz similarly is inapplicable because Moskovitz involved an award of prejudgment interest for the insurer's lack of a good faith effort to settle, while here National Union settled the claims at issue. Moreover, as National Union clarified in oral argument, it is willing to turn over the documents in the claims files that do not deal with attorney advice or analysis with respect to a particular claim.
 {¶ 11} In support of its contentions, National Union asserts the court must apply an objective reasonableness standard to the good faith requirement contained in the above-quoted endorsement language. It claims that because an objective rather than subjective standard must be applied to determine good faith, OSU can prove lack of good faith by looking at the same objective information National Union's attorney examined, without the advice or conclusions of National Union's attorneys, and then hire an expert to determine whether the settlement was reasonable. To the contrary, OSU maintains the attorney's advice and analysis are necessary to determine whether National Union followed that advice in settling the claims, whether it disregarded the advice and analysis and simply settled the claims to quickly dispose of them, and whether the attorney acted in good faith.
 {¶ 12} The facts and circumstances of this case admittedly are not identical to either Moskovitz or Boone. Moskovitz involved a claim that a liability insurer failed to make a good faith effort to settle; Boone
involved an insured's claim of bad faith denial of uninsured or underinsured benefits under the insured's policy. While this case differs from either of those cases, the facts make discovery of National Union's files more compelling. National Union's policies provided for substantial deductibles and, in some instances, amounted to "fronting" policies that required OSU to reimburse National Union for the entire amount of the settlement. As OSU characterizes the dispute over the contents of the claims files, National Union spent OSU's money in settling the cases, but now refuses to allow OSU the opportunity to discover whether National Union expended OSU's funds in good faith.
 {¶ 13} While, unlike Boone, OSU has not filed a per se "bad faith denial of coverage" claim against National Union, it has asserted National Union failed to exercise good faith in paying OSU's money to settle the claims. Because the endorsement language and Ohio law impose on National Union a duty to handle claims in good faith, see Hahn'sElectric, supra, citing Hoskins v. Aetna Life Ins. Co. (1983),6 Ohio St.3d 272 (noting that "[a]n insurer has a duty to its insured to act in good faith in the handling of an insured's claims"), the critical issue in evaluating the discoverability of otherwise privileged material in this case reduces to whether the documents cast light on National Union's exercise of good faith. Moskovitz; Boone, supra. As in Moskovitz
and Boone, they do. Under the circumstances here, which are as compelling, if not more, than either of those cases, we fail to see any valid reason to preclude OSU from determining whether National Union complied with the terms of its policies and settled the claims in good faith.
 {¶ 14} Moreover, the entire contents of the claims files, including the attorney's advice and analysis, are appropriately disclosed to allow OSU the opportunity to demonstrate a "lack of good faith" in National Union's settlement of the claims, as "claims file materials that show an insurer's lack of good faith" are unworthy of protection. Boone, at 213. Without the requested claims files, OSU cannot ascertain how National Union determined whether the claimant who received settlement was an "insured" under the policy or whether the settlement was in accordance with its attorney's advice and conclusions.
 {¶ 15} In the final analysis, National Union is in the difficult position of seeking full reimbursement from OSU, but is unwilling to turn over documents that may cast light on whether OSU actually owes that money. Further, contrary to National Union's suggestion, deposing a National Union representative would not be an adequate substitute for the claims files, as OSU would be unable to verify the information the representative relayed to OSU. Accordingly, the attorney's advice and communications to National Union are discoverable, together with the remaining contents in the claims files. National Union's first assignment of error is overruled.
 {¶ 16} Because the claims files are discoverable in their entirety under the facts of this case, the second assignment of error concerning the applicability of the subject matter waiver doctrine is moot. National Union's third assignment of error contends the trial court erred in not conducting an in camera inspection of the documents prior to ordering disclosure.
 {¶ 17} While trial courts generally should conduct an in camera inspection before ruling on matters of privilege in a pending case, In reSubpoena Duces Tecum Served Upon Attorney Potts, 100 Ohio St.3d 97,2003-Ohio-5234, the trial court in this case did not. An in camera inspection usually is necessary to enable the trial court to separate privileged documents from non-privileged documents in order to avoid compromising any confidential information. Peyko v. Frederick (1986),25 Ohio St.3d 164 (stating that if a party asserts attorney-client privilege with regard to the contents of a claims file, the trial court shall determine by an in camera inspection, which portions of the file are so privileged); Moskovitz, supra; Henneman v. City of Toledo (1988),35 Ohio St.3d 241.
 {¶ 18} The documents at issue are the claims files. The information contained in them was not compromised prior to the trial court's ruling. Indeed, National Union has not turned over any documents to the court or OSU. We thus could remand the case to the trial court to conduct an in camera inspection, but we perceive no purpose in doing so. We recognizeMoskovitz noted that some aspects of the claims file in that case, such as "theory of defense" documents, were excepted from discovery. The rationale for the exception appears tied to the fact that the issue to be resolved in Moskovitz did not implicate the entire claims file. SeeBoone, supra (concluding that the exception for "theory of defense" documents in Moskovitz did not apply).
 {¶ 19} Here, the attorney-client privilege and work product doctrine were the only bases National Union posited on appeal for precluding discovery. Because neither prevents disclosure of the claims files in this case, the trial court will have no reason to conduct an in camera inspection on remand. We thus cannot say the trial court committed reversible error under the somewhat unique circumstances of this case. Instead, the trial court properly held the claims files from previously settled cases, in their entirety, were discoverable. We acknowledge that different facts may require an in camera inspection in other cases; we conclude only that an in camera inspection in this case would be superfluous. Accordingly, National Union's third assignment of error is overruled.
 {¶ 20} Having overruled National Union's first and third assignments of error and having determined the second assignment of error is moot, we affirm the judgment of the Ohio Court of Claims.
Judgment affirmed.
French and McGrath, JJ., concur.