OPINION
{¶ 1} Defendant-appellant, DHL Express (USA), Inc. (DHL), appeals the decision of the Clinton County Court of Common Pleas, denying its motion for the return of a privileged *Page 2 
document and a protective order.[1] We affirm the decision of the common pleas court.
 {¶ 2} Although not the subject of this interlocutory appeal, on June 2, 2006, plaintiff-appellee, Air-Ride, Inc. (Air-Ride), filed a breach of contract claim against DHL after DHL was assigned a Master Line-Haul Agreement negotiated between Air-Ride and ABX Air, Inc. (ABX). The instant appeal instead focuses on waiver of the attorney-client privilege and the law of inadvertent disclosure with regards to a document produced by DHL during discovery.
 {¶ 3} On December 12, 2007, DHL made a supplemental production of documents to Air-Ride in compliance with a court-ordered motion to compel. Contained within that supplemental production was a two-page email between a DHL in-house attorney and a DHL employee which Air-Ride found. Air-Ride's attorneys promptly sent a letter to DHL, on December 18, 2007, informing DHL that the email was produced as part of the supplemental production. Additionally, the letter stated that it was Air-Ride's belief that the email was produced deliberately, as it was marked "confidential" consistent with the protective order in place. The following day, DHL responded to the letter, stating that the document was inadvertently produced and requested its return. Air-Ride did not return the email.
 {¶ 4} On January 4, 2008, DHL filed a motion with the common pleas court requesting the return of the document and a protective order. After conducting a hearing on the matter, the court denied DHL's motion, finding DHL had waived any attorney-client privilege associated with the email pursuant to R.C. 2317.02(A), as DHL had voluntarily given testimony on the same subject within the affidavit.[2] In addition, the court also gave an alternative reason for denying the motion by applying the five-factor test associated with inadvertently disclosed documents set forth in Evenflo Co., Inc. v. Hantec Agents Ltd. *Page 3 
(S.D.Ohio Oct. 13, 2006), No. 3:05-CV-346, 2006 WL 2945440 at 5-6, determining "that the overriding interests of justice weigh[ed] in favor of allowing the [d]ocument to be considered by the trier of fact as among the evidence in this case." DHL raises one assignment of error in this interlocutory appeal of the common pleas court's decision regarding disclosure of the email.
 {¶ 5} "THE TRIAL COURT ERRED BY DENYING DHL'S MOTION FOR THE RETURN OF [THE] PRIVILEGED DOCUMENT."
 {¶ 6} In its sole assignment of error, DHL argues that the court of common pleas erred in denying its motion for the return of the document because there was no waiver of the attorney-client privilege, and alternatively, the five-factor test for inadvertent disclosure weighs in its favor and requires the document's return.[3]
 {¶ 7} "The standard of review applied in discovery disputes involving privilege varies among courts." Natl. Union Fire Ins. Co. of Pittsburghv. Ohio State Univ. Bd. of Trustees, Franklin App. No. 04AP-1340,2005-Ohio-3992, ¶ 4. "The regulation of discovery is committed to the sound discretion of the trial court and will not be overturned by a reviewing court absent an abuse of that discretion." Henderson Elec. Co.of Ohio, Inc. v. Elan Constr. Mgt. Serv. (1993), 92 Ohio App.3d 98, 101, citing Williams v. S. Ohio Corr. Facility (1990), 67 Ohio App.3d 517,523. Therefore, any errors with regards to discovery matters are usually reviewed under an abuse of discretion standard. Selby v. Ft. HamiltonHosp., Butler App. No. CA2007-05-126, 2008-Ohio-2413, ¶ 9, citingTrangle v. Rojas, 150 Ohio App.3d 549, 553, 2002-Ohio-6510. An abuse of discretion only occurs where the court's decision was unreasonable, arbitrary or unconscionable. State ex rel. The V Cos. v. Marshall, 81 Ohio *Page 4 
St.3d 467, 469, 1998-Ohio-329. Where the decision is based on a "proper interpretation of a statute, [or] an issue of law [it is] subject to de novo review." Selby at ¶ 9. Whether we apply an abuse of discretion standard, or review the matter de novo, we find no error in the common pleas court's decision.
 {¶ 8} "In Ohio the attorney-client privilege is governed by statute, R.C. 2317.02(A) * * *."[4] State ex rel. Leslie v. Ohio Hous. Fin.Agency, 105 Ohio St.3d 261, 2005-Ohio-1508, ¶ 18. In fact, "R.C. 2317.02(A) provides the exclusive means by which privileged communications directly between an attorney and a client can be waived."State v. McDermott, 72 Ohio St.3d 570, 574, 1995-Ohio-80. There are two ways, pursuant to the statute, to waive the attorney-client privilege: "(1) the client expressly consents, or (2) the client voluntarily testifies on the same subject." Id. at 572, following Swetland v.Miles (1920), 101 Ohio St. 501, 504.
 {¶ 9} In this case, there is no indication that there was express consent on the part of DHL, so the question we must address is whether there was waiver through voluntary testimony on the same subject. "`Testimony' * * * is `[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" Crawford v.Washington (2004), 541 U.S. 36, 51, 124 S.Ct. 1354, quoting 2 N. Webster, An American Dictionary of the English Language (1828). Testimonial statements include, "`extrajudicial statements * * * contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions'" Id. at 51-52, quotingWhite v. Illinois (1992) 502 U.S. 346, 365, 112 S.Ct. 736 (Thomas, J., joined by Scalia, J., concurring in part and concurring in judgment). Additionally, *Page 5 
we note that in Gialousis v. Eye Care Assoc., Inc., Mahoning App. No. 05 MA 163, 2007-Ohio-1120 ¶ 20, 24, the court of appeals found waiver of the attorney-client privilege where the appellant filed an affidavit.
 {¶ 10} "The Ohio Supreme Court has held that the legislature meant the word `subject,' as used in this statute, to apply in its unlimited and unrestricted sense to the subject of the controversy, and not merely to the subject of the communications. Therefore, in Ohio, by voluntarily offering himself as a witness generally in his own behalf, the client waives all the protection which the law would otherwise have afforded to [privileged] communications * * * pertinent to the issue on trial, and they are no longer privileged." Inzano v. Johnston (1986),33 Ohio App.3d 62, 65, citing Spitzer v. Stillings (1924), 109 Ohio St. 297;Travelers Indemnity Co. v. Cochrane (1951), 155 Ohio St. 305; 44 Ohio Jurisprudence 3d (1983) 209, Evidence and Witnesses, Section 846.
 {¶ 11} Before the email was produced, DHL voluntarily attached the affidavit of the former director of line haul operations for DHL to its summary judgment motion, which directly contradicted the contents of the email. Both the affidavit and the email were clearly about the same subject. When the affidavit was filed, it waived any claimed privilege over attorney-client communications on that particular subject. Therefore, the court of common pleas did not err when it found that DHL had waived its claim of privilege over the email through the voluntary testimony contained in the affidavit.
 {¶ 12} We also find no error in the court of common pleas' determination that the five-factor test for the law of inadvertent disclosure waives any privilege over the email. Because the attorney-client privilege is a statutory creation, it is an exception to the general rules of disclosure. Farm Credit Bank of St. Paul v.Huether (N.D. 1990), 454 N.W.2d 710, 721 (internal citations and quotations omitted). Where it obstructs the search for relevant information, the privilege should be strictly construed. Id. "Disclosure of privileged *Page 6 
communications during discovery ordinarily results in waiver and loss of the privilege." Draus v. Healthtrust, Inc. (S.D.Ind. 1997)172 F.R.D. 384, 386. See, also, Hartford Fire Insurance Co. v. Garvey
(N.D.Cal. 1985), 109 F.R.D. 323, 329-30 (finding a majority of cases hold inadvertent disclosure of privileged documents constitutes waiver). While privilege is supported by powerful policies, those policies are undermined when one party discloses a privileged document to the opposing party. Id. at 389.
 {¶ 13} There are three approaches that have been taken with regard to inadvertent disclosure of privileged documents. Miles-McClellan Constr.Co. v. Westerville Bd. of Edn., Franklin App. Nos. 05AP-1112, 05AP-1113, 05AP-1114, 05AP-1115, 2006-Ohio-3439, ¶ 14, citing Draus. The first approach is a per se waiver of privilege, where there is "`strict accountability'" for inadvertent disclosure. Id. quoting Draus at 387. This may necessarily lead to a "harsh outcome" on parties in litigation, particularly where discovery may consist of "vast quantities of documents." Id. at ¶ 15. Conversely, there is a view espoused by some courts which states inadvertent disclosure never waives the privilege because the waiver, "`must be intentional.'" Id. at ¶ 14. The obvious problem with this approach is that any disclosure whether purposeful or unintentional still results in the loss of confidentiality. See,Internatl. Digital Sys. Corp. v. Digital Equip. Corp. (D.Mass. 1988),120 F.R.D. 445, 449.
 {¶ 14} The third approach is a balancing test or a case-by-case analysis wherein five factors are weighed in order to determine whether the privilege has been waived. Id. at ¶ 14, 16.
 {¶ 15} "`This test strikes the appropriate balance between protecting attorney-client privilege and allowing, in certain situations, the unintended release of privileged documents to waive that privilege. The middle test is best suited to achieving a fair result. It accounts for the errors that inevitably occur in modern, document-intensive litigation, but treats carelessness with privileged material as an indication of waiver. The middle test provides the *Page 7 
most thoughtful approach, leaving the trial court broad discretion as to whether waiver occurred and, if so, the scope of that waiver. It requires a detailed court inquiry into the document practices of the party who inadvertently released the document.'" State ex rel. AllstateIns. Co. v. Gaughan (1998) 203 W. Va. 358, 378, quoting Gray v.Bicknell (C.A.8, 1996) 86 F.3d 1472, 1484.
 {¶ 16} We find, in concurrence with the Third and Tenth Appellate Districts, and the court of common pleas in this case, that the balancing test is the best way to approach the issue of inadvertent disclosure. See id. at ¶ 15-16 and Guider v. Am. Heritage HomesCorp., Logan App. No. 8-07-16, 2008-Ohio-2402, ¶ 10.
 {¶ 17} The five factors of the balancing test have been articulated in different ways, but in essence are: (1) the reasonableness of the precautions taken to prevent inadvertent disclosure; (2) the time taken to rectify the error; (3) the scope of the discovery; (4) the extent of the disclosure; and (5) the "overriding issue of fairness."[5]Miles-McClellan at ¶ 16. No factor is dispositive, although courts have found, "overreaching considerations of fairness" often weigh heavily in favor of finding waiver of privilege after an inadvertent disclosure.United States v. Gangi (S.D.N.Y. 1998), 1 F.Supp.2d 256, 268.
 {¶ 18} The inadvertent disclosure of documents is, in itself, indicative of a failure to take reasonable precautions to protect privilege. See Draus at 388. Counsel must take care to maintain the integrity between confidential and nonconfidential materials and inform others of their privileged nature. Local 851 of the Internatl. Bhd. ofTeamsters v. Kuehne Nagel Air Freight, Inc. (E.D.N.Y. 1999),36 F. Supp. 2d 127, 132.
 {¶ 19} Here, DHL's counsel reviewed the discovery prior to production and "withheld or *Page 8 
redacted a number of items," yet still allowed the email to be produced. Indeed, the email in question was marked with a "confidential" stamp which certified the document had been personally reviewed by an attorney before marking it confidential. Upon review, the attorney would have been able to determine whether the email should have been produced, assuming any precautions were in place to prevent its dissemination. This factor seems to weigh in favor of finding waiver.
 {¶ 20} An "[i]nordinate delay" in discovering disclosure "may be deemed [as a] waiver" of privilege. Local 851 at 133. Even where a party acts promptly to reassert privilege, the time taken to learn of the discovery can favor waiver of privilege. See Sec. Exch. Comm. v.Cassano (S.D.N.Y. 1999), 89 F.R.D. 83, 86. Furthermore, courts have looked unfavorably on parties claiming privilege after disclosure, where there is a delay in asking for a protective order. See In re Poly.Carpet Antitrust Litig. (N.D.Ga. 1998), 181 F.R.D. 680, 690 (finding the disclosing party waited over a month before formally requesting court intervention, which weighed in favor of finding waiver), see contra,Gangi at 266 (finding the government acted promptly when they sought relief from the court within a day after learning of the disclosure).
 {¶ 21} In this case, DHL discovered the disclosure of the email six days after it had been produced, and only after Air-Ride contacted DHL about the document. While DHL promptly requested its return, upon learning of its disclosure from Air-Ride's December 18, 2007 letter, it took DHL more than two weeks before it asked for judicial intervention. Therefore, this factor also weighs in favor of finding waiver.
 {¶ 22} The scope of discovery in determining inadvertent disclosure is the amount of documents produced "at the time [the privileged] documents were disclosed." Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc.
(S.D.N.Y. Nov. 19, 1996), No. 96 Civ. 2064 (RWS), 1996 WL 668862 at 3. While privilege has been protected in cases of inadvertent disclosure where the production of discovery is significant; when the "overall scope of production is limited * * * *Page 9 
[a] failure to protect privileged documents is more likely to constitute waiver." Id. at 5. See, also, Fed. Deposit Ins. Corp. v. Marine MidlandRealty Credit Corp. (E.D.Va. 1991), 138 F.R.D. 479, 483 (finding an "inference of waiver" where the scope of discovery was 15,000 to 50,000 documents); Universal City Dev. Partn., Ltd. v. Ride Show Eng.,Inc. (M.D.Fla. 2005), 230 F.R.D. 688, 694 (finding waiver where the scope of discovery was 13,000 pages).
 {¶ 23} In contrast, there is no waiver when the scope of discovery is "voluminous." See, e.g., In re Se. Banking Corp. Sec. Loan Loss Reser.Litig. v. Fed. Deposit Ins. Corp. (Bankr.S.D.Fla. 1997), 212 B.R. 386,393-94 (finding no waiver where the scope of discovery was 944 boxes of documents); In re Poly. at 690 (declining to find waiver for inadvertently disclosed documents when the scope of the discovery was over one million pages); United States v. Pepper's Steel Alloys,Inc. (S.D.Fla. 1990), 742 F.Supp. 641, 644-45 (finding no waiver where discovery was 100,000 pages).
 {¶ 24} DHL states that it "reviewed over 20,000 pages" of documents before the December 12, 2007 supplemental production. But DHL also maintains that it "withheld or redacted a number of documents," so the number of documents produced may have been less than 20,000. While two pages out of even 20,000 documents is seemingly a small number, it is by no means an excusable amount. Because we do not wish to suggest that this factor is satisfied or unsatisfied in this particular instance and because this document had already been stamped "confidential", we find that this factor neither weighs in favor of, nor against waiver.
 {¶ 25} Where inadvertent disclosure of privileged documents "results in [a] `complete disclosure' of the contents [of the privileged material] to the opposing party," courts are more apt to find privilege is waived. Claiborne at *5 (finding waiver where opposing counsel had access to privileged notes overnight and were able to review and understand their contents). Disclosure is complete "when documents are turned over and allowed to be copied, digested, *Page 10 
and analyzed." Scott v. Glickman (E.D.N.C. 2001), 199 F.R.D. 174, 180.
 {¶ 26} Air-Ride had the opportunity to fully review the email, because it was completely disclosed. It was only after Air-Ride evaluated the email that it realized the document's full import to the case, and as a result, notified DHL of its existence. The disclosure factor weighs in favor of waiver.
 {¶ 27} Finally, when disclosing counsel is so "negligent in their failure to protect privilege * * * fairness mandates that * * * [a] court not look the other way." Universal City Dev. Partn., Ltd. v. Ride Show Eng., Inc. (M.D.Fla. 2005), 230 F.R.D. 688, 694. See, also,Edwards v. Whitaker (M.D.Tenn. 1994), 868 F.Supp. 226, 229 (finding "[i]t * * * unfair to reward * * * carelessness," by granting the disclosing party a protective order); Fed. Deposit Ins. Corp. v. Marine MidlandRealty Credit Corp. (E.D.Va. 1991), 138 F.R.D. 479, 483 (finding it would have been, "fundamentally unfair * * * to reward [the disclosing party] with a protective order"). Furthermore, the "overriding interests of justice * * * would not be served by relieving the [disclosing party] of its error." Id.
 {¶ 28} Where inadvertently disclosed documents are found to be relevant to the receiving party, fairness dictates waiver should be found. Draus at 388. See, also, Local 851 at 134 (finding that "restoring immunity to the inadvertently disclosed letter [from defendants]" would prejudice the plaintiffs because the information contained in the disclosed letter was relevant to plaintiff's case). TheDraus court said that the "overriding issues of fairness" favored waiver and allowing the privilege to be reasserted would be tantamount to "rescu[ing] the defendants from a serious error of their own making." Id. at 390-91; contra Wallace v. Beech Aircraft Corp. (D.Kan. 1998),179 F.R.D. at 313, 315 (no waiver for fairness where the contents of the documents inadvertently disclosed, "shed no [l]ight on * * * issue[s]" in that case).
 {¶ 29} Air-Ride states that the contents of the email in light of the affidavit are matters *Page 11 
"at the heart of this dispute," and urges this court to find waiver based on the "overriding interests of justice." DHL counters this by arguing that the email does not contradict the affidavit. We find no error with the court of common pleas finding that "the overriding interests of justice weigh in favor of allowing the [d]ocument to be considered by the trier of fact as among the evidence in this case." Four of the five factors weigh in favor of finding that privilege over the email has been waived, and that DHL's motion for the return of a privileged document and a protective order was properly denied.
 {¶ 30} Whether the attorney-client privilege was waived pursuant to R.C. 2317.02(A), or privilege was lost through application of the law of inadvertent disclosure, we find that the court of common pleas did not err in making its decision, nor did the court abuse its discretion.
 {¶ 31} Judgment affirmed.
WALSH, P.J., and YOUNG, J., concur.
[1] Pursuant to Loc. R. 6(A), we have sua sponte removed this appeal from the accelerated calendar.
[2] Because the appeal was filed under seal, the contents of the affidavit and email will only be referred to in general terms.
[3] We do not reach the question of whether the email produced during supplemental discovery was in fact afforded the protection of the attorney-client privilege. Instead, we follow the common pleas court's assumption of privilege in rendering our decision.
[4] While we recognize the statute seems solely to refer to a prohibition on attorney testimony, the Supreme Court of Ohio has stated, "R.C. 2317.02(A) provides a testimonial privilege — i.e., it prevents an attorney from testifying concerning communications made to the attorney by a client or the attorney's advice to a client. A testimonialprivilege applies not only to prohibit testimony at trial, but also toprotect the sought after communications during the discoveryprocess. The purpose of discovery is to acquire information for trial. Because a litigant's ultimate goal in the discovery process is to elicit pertinent information that might be used as testimony at trial, the discovery of attorney-client communications necessarily jeopardizes the testimonial privilege. Such privileges would be of little import were they not applicable during the discovery process." Jackson v.Greger, 110 Ohio St.3d 488, 2006-Ohio-4968, ¶ 7, fn. 1 (emphasis added).
[5] See also, Evenflo at 6 (applying five factors from Fox v.Massey-Ferguson, Inc. (E.D.Mich. 1995), 172 F.R.D. 653, 671: "(1) the reasonableness of precautions taken in view of the extent of document production, (2) the number of inadvertent disclosures, (3) the magnitude of the disclosure, (4) any measures taken to mitigate the damage of the disclosures, and (5) the overriding interests of justice"). *Page 1