[Cite as *Morgan v. Butler*, 2017-Ohio-816.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

Jenny Morgan,                                    :

      Appellant-Appellee,              :

v.                                               :          No. 16AP-488
                                            (ERAC No. 15-6830)

Craig W. Butler, Director of                     :
Environmental Protection Agency et al.,                (ACCELERATED CALENDAR)
                                                 :
      Appellees-Appellants.            
                                                 :

                                                 :

---

# D E C I S I O N

### Rendered on March 7, 2017

---

**On brief:** *Jenny Morgan*, pro se. **Argued:** *Dennis Hirsch*.

**On brief:** *Michael DeWine*, Attorney General, and *Cameron F. Simmons*, and *Sarah Bloom Anderson*, for appellant Craig W. Butler, Director of Environmental Protection. **Argued:** *Cameron F. Simmons*.

---

APPEAL from the Environmental Review Appeals Commission

SADLER, J.

{¶ 1} Appellee-appellant Ohio Environmental Protection Agency ("EPA") appeals from a judgment of the Environmental Review Appeals Commission ("commission") in favor of appellant-appellee, Jenny Morgan, granting appellee's motion to compel discovery of certain attorney-client communications. For the reasons that follow, we reverse.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On August 19, 2014, Morgan filed a verified complaint, pursuant to R.C. 3745.08, with EPA Director Craig W. Butler alleging that an asphalt company by the name

of Scioto Materials, LLC, was violating Ohio environmental laws pertaining to air pollution. R.C. 3745.08 pertains to the investigation of complaints filed by persons aggrieved or adversely affected by alleged violations of Ohio environmental laws. The statute provides, in relevant part, as follows:

> (A) [A]ny person who is or will be aggrieved or adversely affected by a violation that has occurred, is occurring, or will occur may file a complaint, in writing and verified by the affidavit of the complainant, * * * with the director of environmental protection, * * * alleging that another person has violated, is violating, or will violate any law * * * relating to air pollution.
>
> (B) Upon receipt of a complaint authorized by this section, the director shall cause a prompt investigation to be conducted such as is reasonably necessary to determine whether a violation, as alleged, has occurred, is occurring, or will occur. * * * If, upon completion of the investigation, the director determines that a violation, as alleged, has occurred, is occurring, or will occur, the director may enter such order as may be necessary, request the attorney general to commence appropriate legal proceedings, or, where the director determines that prior violations have been terminated and that future violations of the same kind are unlikely to occur, the director may dismiss the complaint. *If the director does not determine that a violation, as alleged, has occurred, is occurring, or will occur, the director shall dismiss the complaint.*

(Emphasis added.)

{¶ 3} In accordance with the provisions of the statute, Director Butler initiated an investigation of the allegations in Morgan's verified complaint. The record shows that John Paulian, supervisor in the EPA Division of Air Pollution Control, played an important role in EPA's review of the verified complaint. The record also shows that Air Permitting and Compliance Supervisor Bryon J. Marusek of EPA's Central District Office participated in EPA's investigation of the substantive allegations of the complaint.

{¶ 4} On February 2, 2015, Director Butler sent a letter to Morgan informing her that EPA had dismissed her verified complaint because the investigation revealed that Scioto Materials, LLC, had not violated the terms and conditions of its EPA permit. Morgan appealed the judgment of dismissal to the commission pursuant to R.C. 3745.04.

In Morgan's R.C. 3745.04 appeal to the commission, Morgan named Director Butler as appellee in accordance with R.C. 3745.04(B).[1]   And in such proceedings, the Ohio Attorney General provides the director's legal representation.  R.C. 109.02.

{¶ 5}  In connection with the discovery process in Morgan's appeal to the commission, EPA inadvertently forwarded a document to Morgan that EPA identified as a confidential attorney-client communication.  Immediately on discovery of the error, EPA's legal counsel notified Morgan and asked her to "sequester" the document in accordance with Civ.R. 26(B)(6)(b).[2]  Morgan complied with the request but filed a motion to compel production and for an in camera review.  Morgan also moved the commission to compel production of several other documents that EPA had produced but with significant redactions due to a claim of attorney-client privilege.  EPA opposed the motion arguing that the documents at issue contained information that was either irrelevant to the appeal or protected from disclosure by the attorney-client privilege.

{¶ 6}  On May 31, 2016, the commission granted Morgan's motion to compel with respect to eight of the documents at issue and denied her motion as to the other three. Pursuant to R.C. 3745.06, EPA appealed to this court from the commission's ruling on the motion to compel.

## II.  ASSIGNMENT OF ERROR

{¶ 7}  Appellant alleges a single assignment of error as follows:

> The Environmental Review Appeals Commission erred by
> granting Appellee's motion for in camera review and motion
> to compel, since the three communications in question are
> protected by the attorney-client privilege.

## III. STANDARD OF REVIEW

{¶ 8}  "Ordinarily, a discovery dispute is reviewed under an abuse-of-discretion standard."  *Ward v. Summa Health Sys.*, 128 Ohio St.3d 212, 2010-Ohio-6275, ¶ 13. However, when the information sought in discovery is subject to a claim of attorney-client privilege, it is a question of law that is reviewed de novo.  *Scott Elliott Smith Co., L.P.A. v.*

---

[1] Scioto Materials, LLC, is also a named appellee because it is a "party to a proceeding substantially supporting the finding from which the appeal is taken."  R.C. 3745.04(B).
[2] *See* EPA's August 18, 2015 response to Morgan's motion for in camera review, Exhibit 1, email to Morgan from Assistant Attorney General Cameron F. Simmons.

*Carasalina, LLC*, 192 Ohio App.3d 794, 2011-Ohio-1602 (10th Dist.). *See also MA Equip. Leasing I, LLC v. Tilton*, 10th Dist. No. 12AP-564, 2012-Ohio-4668, ¶ 13. The de novo standard requires an appellate court to conduct an independent review of the trial court's decision without any deference to the trial court's determination. *McFarland v. West Congregation of Jehovah's Witnesses, Lorain, OH, Inc.*, 9th Dist. No. 15CA010740, 2016-Ohio-5462, ¶ 12.

## IV. LEGAL ANALYSIS

{¶ 9} In EPA's sole assignment of error, it contends that the commission erred by granting Morgan's motion to compel production of unredacted communications that are protected from disclosure by the attorney-client privilege. We agree.

{¶ 10} "The attorney-client privilege exempts from discovery certain communications between attorneys and their clients in the course of seeking or rendering legal advice." *Natl. Union Fire Ins. Co. of Pittsburgh v. Ohio State Univ. Bd. of Trustees*, 10th Dist. No. 04AP-1340, 2005-Ohio-3992, ¶ 6, citing *Boone v. Vanliner Ins. Co.*, 91 Ohio St.3d 209 (2001). The purpose of the privilege "is to encourage frank communication between the attorney and client, thereby promoting broader public interest in the observance of the law and administration of justice." *Natl. Union Fire Ins. Co.* at ¶ 6. " '[B]y protecting client communications designed to obtain legal advice or assistance, the client will be more candid and will disclose all relevant information to his attorney, even potentially damaging and embarrassing facts.' " *State ex rel. Leslie v. Ohio Hous. Fin. Agency*, 105 Ohio St.3d 261, 2005-Ohio-1508, ¶ 20, quoting 1 Rice, Attorney-Client Privilege in the United States, Section 2.3, 14-15 (2d Ed.1999).

{¶ 11} "In Ohio, the attorney-client privilege is governed by statute, R.C. 2317.02(A), and in cases that are not addressed in R.C. 2317.02(A), by common law." *Leslie* at ¶ 18. "R.C. 2317.02(A), by its very terms, is a mere testimonial privilege precluding an attorney from testifying about confidential communications. The common-law attorney-client privilege, however, 'reaches far beyond a proscription against testimonial speech. The privilege protects against any dissemination of information obtained in the confidential relationship.' " *Id.* at ¶ 26, quoting *Am. Motors Corp. v. Huffstutler*, 61 Ohio St.3d 343, 348 (1991). The common-law attorney-client privilege broadly protects against any dissemination of information obtained in the attorney-client

relationship. *Summit Park Apts., LLC v. Great Lakes Reinsurance (UK), PLC*, 10th Dist. No. 15AP-820, 2016-Ohio-1514, ¶ 13.

{¶ 12} " 'Records of communications between attorneys and their state-government clients pertaining to the attorneys' legal advice are excepted from disclosure under R.C. 149.43(A)(1) since the release of these records is prohibited by state law' — i.e., they are protected by this state's attorney-client privilege." *Zingale v. Ohio Casino Control Comm.*, 8th Dist. No. 101381, 2014-Ohio-4937, ¶ 29, quoting *Leslie* at ¶ 24, citing *State ex rel. Thomas v. Ohio State Univ.*, 71 Ohio St.3d 245, 249 (1994). The Supreme Court of Ohio in *Leslie* concluded that the attorney-client privilege in Ohio extends to government agencies consulting with in-house counsel for legal advice or assistance, even if that counsel is not an assistant attorney general. *Id.* at ¶ 43.

{¶ 13} According to the Supreme Court in *Leslie*, the attorney-client privilege applies " '(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived.' " *Id.* at ¶ 21, quoting *Reed v. Baxter*, 134 F.3d 351, 355-56 (6th Cir.1998).

{¶ 14} Though the commission ordered EPA to produce eight of the disputed documents, only three of the eight documents are the subject of this appeal. EPA describes the three documents in its brief to this court as follows:

> Email A contains Mr. Paulian's questions and comments to both technical program staff and in-house counsel about the ultimate contents of the Director's letter dismissing Ms. Morgan's verified complaint.
>
> * * *
>
> Email B contains Mr. Paulian's comments to his colleagues and attorney [Andrew] Bergman on a draft document related to Ms. Morgan's Verified Complaint.
>
> * * *
>
> Email C consists of Mr. Paulian asking Attorney Bergman for his comments and approval on a previously-sent draft of materials related to Ms. Morgan's Verified Complaint.

(Appellant's Brief at 9-11.)

{¶ 15} With regard to e-mail A, identified by Bates stamp number 508, the commission found that it "is not a communication seeking *legal* advice. Accordingly, the Commission finds the communication is not subject to attorney-client privilege." (Emphasis sic.) (May 31, 2016 Ruling on Motion for In Camera Review at 2.) With regard to e-mail B, identified by Bates stamp number 551, the commission found that it "is not a communication seeking or providing legal advice. Therefore, the Commission finds the communication is not subject to the attorney-client privilege." (May 31, 2016 Ruling on Motion to Compel at 2.) Finally, with regard to e-mail C, identified by Bates stamp number 477, the commission found that it "is not a communication seeking or providing legal advice. Therefore, the Commission finds the communication is not subject to the attorney-client privilege." (May 31, 2016 Ruling on Motion to Compel at 2.)

{¶ 16} As a preliminary matter, Morgan argues that this court must apply an abuse of discretion standard in reviewing the commission's order. The cases cited by Morgan in support of her argument stand for the proposition that we review factual issues, such as whether the attorney-client relationship exists, under the abuse of discretion standard, but we apply the de novo standard in reviewing the question whether a particular communication is privileged under Ohio law. *See, e.g., Summit Park Apts.* at ¶ 12; *MA Equip. Leasing* at ¶ 17-18; *Frericks-Rich v. Zingarelli*, 94 Ohio App.3d 357, 360 (10th Dist.1994).

{¶ 17} In this case, there is no dispute that an attorney-client relationship exists between the EPA and in-house legal counsel. Rather, the question in this case is whether the common-law attorney-client privilege protects the three communications at issue. In our view, that question is purely one of Ohio common law and does not involve the resolution of disputed facts. Accordingly, the de novo standard of review applies in this case. *Id.*

{¶ 18} In order to determine whether the three e-mail communications are privileged, it is necessary for this court to understand the context in which Paulian sent the e-mails. *State ex rel. Lanham v. DeWine*, 135 Ohio St.3d 191, 2013-Ohio-199. For example, there is no dispute that each of these communications relates either to the investigation of, or dismissal of, Morgan's verified complaint pursuant to R.C. 3745.08.

Otherwise, the commission would have determined that the communications were not relevant to Morgan's appeal of EPA's decision to dismiss her verified complaint. Additionally, there is no indication in the record that EPA's in-house attorneys hold any other title or position with EPA other than legal counsel. *See* Restatement of the Law 3d, Law Governing Lawyers, Section 72, comment c (2000) (the privilege does not protect "communications with a person who is a lawyer but who performs a predominantly business function within an organization"). Our review of the e-mails in question also reveals that they were not preexisting documents simply copied to EPA's in-house counsel. *See* Restatement of the Law 3d, Law Governing Lawyers, Section 69, comment j (2000) ("A client-authored document that is not a privileged document when originally composed does not become privileged simply because the client has placed it in the lawyer's hands."). Rather, each of the three e-mails at issue was prepared for and transmitted to EPA legal counsel and other EPA employees involved in the investigation and review of the verified complaint.

{¶ 19} Furthermore, with regard to e-mail A, Paulian submitted his own affidavit in support of EPA's claim of privilege. The affidavit states in relevant part:

> 2. I have been a Compliance Monitoring Unit Supervisor in Ohio EPA's Division of Air Pollution Control since 2004;
>
> 3. My duties include processing verified complaints, data management, supervising staff in Ohio EPA's Compliance Program, and maintaining the air enforcement files at Ohio EPA.
>
> 4. I sent the email filed under seal on November 13, 2014 with the subject line, *Re: Scioto Materials verified complaint.*
>
> 5. I carbon copied two Ohio EPA in-house attorneys, Drew Bergman and Marcus Glasgow, to obtain legal counsel concerning the questions asked in the email about Jenny Morgan's verified complaint.
>
> 6. I sent the email in confidence."

(Emphasis sic.) (Paulian Aff. at 1-2.)

{¶ 20} In this case, Director Butler is the statutory appellee in Morgan's appeal to the commission from EPA's ruling on Morgan's verified complaint. Consequently, the

protections of the attorney-client privilege are necessary to encourage frank communication between EPA investigatory staff and EPA in-house legal counsel, thereby promoting broader public interest in the observance of the law and administration of justice. *See Leslie* at ¶ 20, citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *Cargotec, Inc. v. Westchester Fire Ins. Co.*, 155 Ohio App.3d 653, 2003-Ohio-7257, ¶ 7 (6th Dist.). Our review of the communications identified as e-mails A, B, and C reveal that each was sent by Paulian to EPA's in-house legal counsel, in their capacity as such, seeking some form of legal advice or assistance with regard to the director's investigation and review of Morgan's verified complaint. The fact that Paulian simultaneously sent the e-mails to other EPA employees for the purpose of seeking technical, non-legal advice or assistance with regard to the verified complaint does not alter the fact that Paulian sent the e-mails in question to in-house legal counsel for the purpose of seeking legal advice and assistance. The record discloses no other purpose for Paulian to send e-mails of this nature to attorneys Bergman or Glasgow. Moreover, the attorney-client privilege does not require that the communication pertain purely to legal advice, but " 'if a communication between a lawyer and client would facilitate the rendition of legal services or advice, the communication is privileged.' " *State ex rel. Toledo Blade Co. v. Toledo-Lucas Cty. Port Auth.*, 121 Ohio St.3d 537, 2009-Ohio-1767, ¶ 27, quoting *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir.1991). Similarly, attorney-client privilege applies to the three e-mails in question regardless of whether they contain confidential facts. *See Toledo Blade Co.* at ¶ 26 ("[T]he [attorney-client] privilege is not narrowly confined to the repetition of confidences that were supplied to the lawyer by the client."). *See also* Ohio Legal Ethics 1.6:410 (2015) ("The attorney-client privilege applies only to communications and not to facts.").[3]

{¶ 21} Our review of the privilege claim in this case is guided by the decision of the Supreme Court in *Lanham*. In *Lanham*, a taxpayer in the 88th Ohio house district sought a writ of mandamus to compel respondents, the attorney general and his office, to provide unredacted copies of records relating to the taxpayers' claim that State Representative

---

[3] Citing 1 Geoffrey C. Hazard, Jr., W. William Hodes & Peter R. Jarvis, The Law of Lawyering § 10.07.8 at 10-46/-47 (4th Ed.2015); 24 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure, Fed.R.Evid. § 5484 at 320 (1986), and Supp. 2011 at 168.

Danny R. Bubp simultaneously held the public offices of state representative and mayor's court magistrate in violation of the Ohio Constitution, Article II, Section 4 and R.C. 101.26. *Id.* at ¶ 3. The attorney general's office had previously received complaints from Democratic party chairmen of the three counties composing the 88th Ohio house district claiming that Bubp was not eligible to serve in the General Assembly. *Id.* at ¶ 4. In denying the requested writ, the Supreme Court held as follows:

> Here, the two documents Lanham asserts are improperly withheld are asserted by the attorney general's office to have been gathered by Assistant Attorney General McIver as part of his investigation into the matter on which he was advising his client. Our in camera inspection of the documents reveals that they contain material pertinent to such an investigation and were transferred to Assistant Attorney General McIver during the time period that he would have been investigating the Bubp matter for the attorney general. Therefore, we agree with the attorney general's office that the documents are covered by attorney-client privilege and were properly withheld.

*Id.* at ¶ 31.

{¶ 22} In this case, our review of e-mail A validates Paulian's averment that he copied attorneys Bergman and Glasgow "to obtain legal counsel concerning the questions asked in the e-mail about Jenny Morgan's verified complaint." (Paulian Aff. at 2.) Our review of e-mail B confirms EPA's assertion that Paulian copied attorney Bergman on the e-mail for the purpose of seeking legal advice or assistance in preparing materials related to the investigation and review of Morgan's verified complaint. Finally, our review of e-mail C validates EPA's claim that Paulian sent the e-mail to attorney Bergman for the purpose of seeking legal advice and/or approval of previously provided materials regarding Morgan's verified complaint. Although it is clear that obtaining legal advice or assistance was not Paulian's only purpose in sending the three e-mails in question, given the subject matter of the communications, the individuals to whom the communications were sent, and the time frame in which information was transmitted, these three e-mails were sent to EPA's in-house legal counsel for the purpose of seeking legal advice or assistance in responding to Morgan's verified complaint. *Lanham.*

{¶ 23} In support of the privilege claim, EPA asserts that Morgan failed to challenge EPA's claim of attorney-client privilege regarding e-mails authored either by attorney Bergman or attorney Glasgow. Because the claim of attorney-client privilege was unchallenged with regard to these e-mails, the e-mails are not part of the record in this appeal. Nevertheless, our review of the privilege log submitted by EPA in opposition to Morgan's motion to compel reveals that Bergman sent a January 9, 2015 e-mail in response to e-mail B. Thus, it is reasonable to infer from Morgan's acquiescence to EPA's claim of privilege with regard to Bergman's response that Paulian sent e-mail B to Bergman for the purpose of seeking legal advice or assistance.

{¶ 24} As a result of our independent review, we find that the three e-mail communications at issue are privileged attorney-client communications. Additionally, with regard to e-mails B and C, there is no argument and nothing in the record to support a finding that Paulian published the communications to any third-party not covered by the privilege. Accordingly, we hold that the commission erred when it granted Morgan's motion to compel production of e-mails B and C.

{¶ 25} With regard to e-mail A, Morgan argues alternatively that EPA waived the attorney-client privilege by producing an unredacted copy of the e-mail in discovery. Civ.R. 26(B)(6)(b) provides in relevant part:

> If information is produced in discovery that is subject to a claim of privilege * * *, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a receiving party must promptly return, sequester, or destroy the specified information and any copies within the party's possession, custody or control. A party may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim of privilege.

{¶ 26} Morgan acknowledges that EPA complied with the provisions of Civ.R. 26(B)(6)(b) following the inadvertent disclosure of e-mail A. Morgan contends, however, that EPA waived the privilege with regard to e-mail A because it did not take reasonable precautions to prevent disclosure to third parties. In *Miles-McClellan Constr. Co. v. Bd. of Edn. Westerville City School Bd.*, 10th Dist. No. 05AP-1112, 2006-Ohio-3439, this court

adopted a case-by-case approach in determining whether a client's inadvertent disclosure of privileged attorney-client communications results in a waiver of the privilege. *Id.* at ¶ 15. This court held that in conducting the case-by-case analysis, trial courts should employ a five-factor balancing test, which requires consideration of (1) the reasonableness of the precautions taken to prevent inadvertent disclosure, (2) the time taken to rectify the error, (3) the scope of the discovery, (4) the extent of the disclosure, and (5) the overriding issue of fairness. *Id.* No factor is dispositive, although courts have found overreaching considerations of fairness often weigh heavily in favor of finding waiver of privilege after an inadvertent disclosure. *Air-Ride, Inc. v. DHL Express (USA), Inc.*, 12th Dist. No. CA2008-01-001, 2008-Ohio-5669, ¶ 12.

{¶ 27} In *Miles-McClellan*, the trial court had determined, without a hearing, that Westerville City Schools' inadvertent disclosure of attorney-client communication to Miles-McClelland effectively waived the attorney-client privilege. In reversing the trial court, this court held as follows:

> We hold that the law in Ohio shall be that the trial court, in addressing inadvertent disclosure of allegedly privileged documents in the course of discovery, must hold a hearing considering the above-outlined factors before determining to what extent, if any, waiver has occurred with respect to the contested materials. We accordingly will vacate the trial court's order and remand this matter to the trial court for such a hearing.

*Id* at ¶ 16.

{¶ 28} Here, the commission conducted an in camera inspection to determine whether e-mail A was a privileged attorney-client communication. The commission did not expressly consider the possible waiver of the privilege in making its ruling because the commission determined that e-mail A was not a communication seeking legal advice. We have determined that the commission erred in that respect and that e-mail A is a privileged attorney-client communication. Accordingly, this court's prior decision in *Miles-McClellan* requires us to reverse the judgment of the commission and remand the matter for a hearing to determine whether EPA waived the attorney-client privilege with regard to e-mail A.

{¶ 29} For the foregoing reasons, we sustain EPA's sole assignment of error with regard to the three e-mail communications in question, and we reverse the judgment of the commission. With regard to e-mail A, we remand the matter to the commission for a hearing to determine whether EPA waived the attorney-client privilege.

## V.  CONCLUSION

{¶ 30} Having sustained appellant's sole assignment of error, we reverse the judgment of the Environmental Review Appeals Commission and remand the matter for the commission to hold a hearing to determine whether EPA waived the attorney-client privilege with respect to e-mail A.

*Judgment reversed*;
*cause remanded with instructions.*

BROWN and LUPER SCHUSTER, JJ., concur.

_____